The Pennsylvania Company, Appellant, v. Roberts and Schaefer Company, Appellee.

Gen. No. 32,682.

Opinion filed November 19, 1928.

LOESCH, SCOFIELD, LOESCH & RICHARDS, for appellant.

CHURCH, HAFT, ROBERTSON & CROWE, for appellee; BURT A. CROWE, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought suit against the defendant to recover damages in the sum of $35,000 which it claimed it had paid to one of its firemen on account of injuries he had sustained through the negligence of defendant. The jury found the issues in favor of the defendant, judgment was entered on the verdict and plaintiff appeals.

On a former appeal of the case to this court it was held that the declaration stated a cause of action; that the court erred in sustaining the defendant's demurrer to it, and the judgment of the trial court was reversed and the cause remanded. 244 Ill. App. 646 (not reported).

The record discloses that the defendant corporation was engaged in building a sanding plant for plaintiff at Conemaugh, Pennsylvania, which was to be used by plaintiff in sanding its locomotives; that about two weeks prior to February 7, 1924, defendant had nearly completed the plant and advised plaintiff that the plant might be used for sanding its locomotives, and thereupon plaintiff began using the plant; that the process is to place a locomotive under a spout attached to the plant, lower the spout over the sand dome of the loco-

motive, pull a rope which opens a sand valve, and the dry sand pours into the dome by force of gravity. There is a counterweight arm which closes the valve and shuts off the sand. Attached to this arm, and suspended about 24 feet above the ground, is a counterweight weighing about 32 pounds and attached to the arm by means of a set screw. It further appears that at about 9 o'clock on the evening of February 7, 1924, one of plaintiff's locomotives was being sanded; that the fireman and the locomotive engineer, who were to take the locomotive and a train belonging to plaintiff on a regular trip over its railroad, came to the place for this purpose; that about this time two other employees of plaintiff were on top of the locomotive sanding it, and as the fireman passed beneath the counterweight attached to the arm, it slipped off the arm, fell and struck him on the head, injuring him severely. The fireman afterwards brought suit against the plaintiff to recover damages for the injuries he had sustained, of which fact plaintiff notified defendant but defendant refused to defend the case. Afterwards the plaintiff settled with the fireman by paying him a substantial sum of money, the exact amount not appearing from the record, and it is to recover the amount it thus paid to the fireman that it instituted the instant suit.

There is little if any dispute in the evidence, and from it the following appears: That about two weeks prior to the date the fireman was injured, as above stated, the defendant had completed the sanding plant but that it had not been turned over and accepted by plaintiff, as there were some slight adjustments to be made, until about March 1, 1924; that plaintiff had been using the plant for sanding its locomotives; that on the evening in question an employee of plaintiff endeavored to sand a locomotive, but was unable to open the valve by pulling the rope; that he called another of plaintiff's employees who was nearby and

the latter got on top of the locomotive, pulled the rope hard, and the counterweight slipped off the arm and fell, striking the fireman. It further appears that upon examination of the counterweight it was found that the set screw was screwed in as far as it would go, and there was a mark on the counterweight arm made by the set screw as the weight slipped off the arm.

Testimony was offered on behalf of the defendant showing that when its employees attached the counterweight to the arm the set screw had been screwed in firmly and after this was done the employee struck the counterweight with a hammer to ascertain whether it was firmly attached to the arm. The set screw in the counterweight came in contact with the arm about nine inches from the end of the arm. When the sand valve was closed the end of the arm to which the weight was attached would be slightly below a horizontal position. There was further evidence as to the nature of the fireman's injuries and the expense incurred for hospital and doctor bills.

Considerable is said in the brief of plaintiff to the effect that the evidence discloses that the sand plant had not been accepted by it until after the accident, but we think this question is not of much importance because it appears from the evidence that the counterweight was insecurely attached to the arm by the defendant; the set screw was too short. In these circumstances the defendant would be liable even if the plant had been turned over to the plaintiff and accepted prior to the time the fireman was injured.

Plaintiff contends that the court erred in giving instructions 10, 11, 12, 13, 14, 15, 16, 17, 19, 20 and 21, at defendant's request.

By instruction 10 the jury was told "that it is the law that there is no contribution between joint tort feasors and you are further instructed that if you find from the preponderance or greater weight of the evi-

dence in this case and under the instructions of the court as given herein that both the plaintiff * * * and the defendant * * * were guilty of negligence which proximately caused the injury to (the fireman), then you should find the defendant not guilty even though you believe that the plaintiff * * * paid money as damages'' to the fireman. On the former appeal of this case we held that from the allegations of the declaration plaintiff and defendant were not *in pari delicto,* and we think the evidence sustained the allegations of the declaration and there is no evidence to the contrary. The plaintiff and defendant not being *in pari delicto,* the rule of law which prevents contribution or indemnity between joint tort-feasors does not apply, and the instruction was wrong. *Chicago Rys. Co. v. R. F. Conway Co.,* 219 Ill. App. 220; *Lowell v. Boston & L. R. Corp.,* 23 Pick. (Mass.) 24; *Washington Gaslight Co. v. District of Columbia,* 161 U. S. 316; *Union Stock Yards Co. of Omaha v. Chicago, B. & Q. R. Co.,* 196 U. S. 217. In the *Union Stock Yards Co.* case, where it was sought to invoke the rule that there was no right of indemnity between tortfeasors, it was held that the rule applied where both wrongdoers were guilty of a like neglect, but that the rule did not apply where this was not the fact. A number of authorities on this question are there analyzed and discussed. The court there quotes from the case of *Gray v. Boston Gaslight Co.,* 114 Mass. 149, where it appeared that the gas company fastened a wire to Gray's chimney without his consent. The weight of the wire pulled the chimney over into the street, injuring a passer-by, who brought an action against the property owner for damages. The property owner gave notice to the gas company, but the latter refused to defend the suit, whereupon the property owner settled the damages with the plaintiff, the injured man, and then brought suit against the gas company to

recover the amount he had paid. It is there said (p. 226):

"When two parties, acting together, commit an illegal or wrongful act, the party who is held responsible * * * for the act cannot have indemnity or contribution from the other, because both are equally culpable or *particeps criminis,* and the damage results from their joint offense. This rule does not apply when one does the act or creates the nuisance, and the other does not join therein, but is thereby exposed to liability and suffers damage. He may recover from the party whose wrongful act has thus exposed him. In such case the parties are not in *pari delicto* as to each other, though, as to third persons, either may be held liable."

After this quotation and some further discussion, the Supreme Court of the United States in that case say (p. 227):

"The case then stands in this wise: The railroad company and the terminal company have been guilty of a like neglect of duty in failing to properly inspect the car before putting it in use by those who might be injured thereby. * * * It is not like the case of the one who creates a nuisance in the public streets; or who furnishes a defective dock" (referring to the case of *Oceanic Steam Nav. Co., Ltd. v. Compania Transatlantic Espanola,* 134 N. Y. 461, which the court had already discussed in the opinion); and continuing: "In all these cases the wrongful act of the one held finally liable created the unsafe or dangerous condition from which the injury resulted. The principal and moving cause, resulting in the injury sustained, was the act of the first wrongdoer, and the other has been held liable to third persons for failing to discover or correct the defect caused by the positive act of the other."

We think it appears from the evidence in the instant case that the fireman was injured through the faulty manner in which the counterweight was attached to the arm by the defendant. It "created the unsafe or dangerous condition from which the injury resulted." This was the positive act of the defendant, and the plaintiff was liable to the injured fireman, as we held on the former appeal, because it failed to furnish him a reasonably safe place in which to do his work.

In the New York case (134 N. Y. 461) cited by the United States Supreme Court above, where the plaintiff, who had leased a dock from the city of New York and sublet it to the defendant, and a third person was injured through the negligence of the subtenant, the injured person bringing suit against the plaintiff to recover damages for the injuries he had sustained, notice being given to the subtenant to defend the suit, which he failed and refused to do, and the injured man had judgment against the plaintiff, it was held that plaintiff might maintain an action against the subtenant and recover, because the latter was the one who was primarily liable.

Instruction No. 11 is complained of because it told the jury that if they were unable to say that plaintiff had proved by the greater weight of the evidence that the injuries sustained by the fireman were caused by the negligence of the defendant, as charged in the declaration, then they should find for the defendant. It is contended that the instruction is bad because it did not tell the jury what the material facts plaintiff was required to prove were, but only referred them to the declaration. We do not think this instruction is subject to the objection made. *Central Ry. Co. v. Bannister,* 195 Ill. 48; *Krieger v. Aurora, E. & C. R. Co.,* 242 Ill. 544.

Since there must be a retrial of the case, we think instruction 12 ought not contain the phrase "on the

occasion in question,'' as it might tend to mislead the jury. This can be readily obviated.

Instructions 13, 17 and 20 told the jury in effect that the mere happening of the accident by which the fireman was injured raised no presumption of negligence on the part of the defendant. We think these instructions were erroneous because the evidence was to the contrary. There was no evidence upon which to base them.

It is said that the instructions were wrong because they ignored the fact that the sanding plant had not been accepted by the plaintiff, and, further, that since the plaintiff filed but the general issue, the operation and control of the plant was admitted to be in the defendant and therefore the doctrine of *res ipsa loquitur* applied. We think neither of these contentions can be sustained.

"The phrase *'res ipsa loquitur,'* which, literally translated, means that 'the thing speaks for itself,' is merely a short way of saying that the circumstances attendant upon an accident are, of themselves, of such a character as to justify a jury in inferring negligence as the cause of that accident." Words and Phrases Judicially Defined, vol. 7, p. 6137; see also section 15, vol. 1, Thompson on Negligence. In the section cited from Thompson the author says: "The principle is generally expressed in the Latin formula *res ipsa loquitur,* 'the thing itself speaks.' The meaning is thus expressed by Erle, J., in giving his judgment in a noted case: 'Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.' This definition has met with general approval at the hands of judges in subsequent cases, and has become, so to speak, a legal

classic.'' This rule has many times been announced by our Supreme Court. *West Chicago St. R. Co. v. Martin,* 154 Ill. 523. But in the instant case there is no room to indulge in the presumption of negligence because the evidence is clear as to how the accident occurred, and where there is specific evidence as to how the accident occurred, no presumption will be indulged. Since the doctrine of *res ipsa loquitur* applies only in cases where the negligence is presumed, it is inapt here.

As to the other contention, since all the evidence shows the circumstances under which the locomotive was being sanded, and since this evidence was introduced without objection, the presumption that the sand plant was under control of the defendant because it had filed only the plea of general issue is not applicable. *Hallagan v. Myles,* 231 Ill. App. 606.

The complaint made against instruction 14 can be readily obviated on a new trial.

We think instruction 15, by which the jury were told that plaintiff was required to prove its case by preponderance and greater weight of evidence, is not objectionable. Moreover, plaintiff is not in a position to complain because instruction No. 5, given at its request, is substantially the same.

What we have heretofore said in reference to the doctrine of *res ipsa loquitur* disposes of the objection made to instruction No. 16.

We think instruction 19 was erroneous. By it the jury were told that if they believed from the evidence the sanding plant had been completed, and while it was being used by plaintiff a condition arose in and about the mechanism of the plant which the defendant could not have reasonably foreseen or anticipated, then they should find the defendant not guilty. If the defendant was guilty of faulty construction, as the evidence tended to show, then it could not relieve itself from liability for the injuries sustained by the fireman on

the ground that it could not have reasonably foreseen or anticipated that such an accident would have occurred.

What we have said in reference to No. 10 is applicable to No. 21, therefore the latter instruction should not have been given.

We think we ought to say that upon a retrial of the case an instruction ought to be given to the jury on the question of damages. They ought not to be left without any instruction on this point, as was the situation on the trial.

The judgment of the circuit court of Cook county is reversed and the cause remanded.

*Reversed and remanded.*

MATCHETT and MCSURELY, JJ., concur.