Juanita H. Wright, Individually and as Administrator of the Estate of David G. Wright, Deceased, and John P. McMillan, Individually and as Administrator of the Estate of John S. McMillan, Deceased, Plaintiffs-Appellees, v. John Joseph Royse, Defendant, and the Illinois Terminal Railroad Company, Defendant-Appellant.

Gen. No. 10,449.

Third District.

October 11, 1963.

Rehearing denied November 6, 1963.

270

Thomas, Mulliken & Mamer, and Wallace M. Mulliken, all of Champaign, for appellant, Illinois Terminal Railroad Company.

Franklin & Flynn, Meyer & Capel, and Appleman, Zimmerly & McKnelly, all of Champaign (Philip C. Zimmerly, of counsel), for appellees.

REYNOLDS, J.

This is an appeal from two judgments rendered on verdicts by the Circuit Court of Champaign County, Illinois, prosecuted by one of the defendants, Illinois Terminal Railroad Company, a corporation, hereinafter referred to as the Railroad. The appeal involves two separate cases which were consolidated for trial and which are absolutely identical except for the names of the plaintiffs. Accordingly, we will deal with them as if they were a single case. In essence, this is a wrongful death action arising out of a collision which occurred on December 30, 1957, between the vehicle in which the decedent was riding as a guest passenger, and which was driven by one of the two defendants, and a signal light assembly owned and operated by the other defendant, the Illinois Terminal Railroad Company. The suit was filed in two counts, one by the administrator seeking damages for the wrongful death and the other by the parents of the decedent seeking medical and funeral expenses arising from the injuries and death which they had paid. Each count was directed against both defendants, jointly, alleging that the defendant driver, Royse, was guilty of wilful and wanton misconduct, that the defendant Railroad was guilty of negligence, and that the negligence of one defendant *and* the wilful and wanton misconduct of the other defendant caused the death of the decedent. Each count sought only a joint judgment against both defendants. The case was tried before a jury which returned verdicts in favor of the plaintiffs on each count, and in each case, jointly, against both defendants. Judgments were entered on the verdicts, post-trial motion was filed, argued and denied. As a result of the foregoing, the defendant Railroad Company took this appeal.

At the very outset, we must take up and dispose of appellees' motion to dismiss this appeal which we

272

previously ordered taken with the case. The motion to dismiss the appeal relates, principally, to the entry of an order by the Trial Court, extending the time for filing the report of proceedings. It appears from the record that before the expiration of fifty (50) days from the filing of the notice of appeal, upon an affidavit made by the court reporter who had reported the trial in question, which was filed in the trial court, the trial judge entered an order extending the time for filing the report of proceedings for forty-five (45) days. Within the extended time, the appellant filed a short record in this court and a motion asking us to extend the time for filing of the report of proceedings. This motion, supported by affidavit of the same reporter who previously filed an affidavit in the Trial Court, and the appellees' objection to the extension of time (which included a contention that the appellees were unaware of the prior extension of time by the Trial Court) were all considered by us at which time we overruled the objections and extended the time for filing, within which time, the record was filed here. It appears clear from the record that the Trial Court entered its order extending the time solely upon the affidavit of the court reporter filed in the Trial Court, without any formal motion being made therefor in writing or otherwise, and without notice to any of the parties. Appellees contend that the Trial Court may properly extend the time in which to file the report of proceedings only upon a written motion, a hearing thereon pursuant to prior written notice, and the showing of good cause therefor.

■ ■ The procedure in question is governed by Appellate Court Rule 1(1)(c) which is identical to Supreme Court Rule 36(1)(c). That rule provides, in part:

"On *application* made before the expiration of the original or extended period allowed by this rule

273

for filing the report of proceedings, any judge of said court may on good cause shown extend the time for filing the same. . . ."

Appellees cite several cases which hold, consistently with the definition contained in Black's Law Dictionary that "motions" are "applications." Appellees then argue that if "motions" are "applications," therefore, all "applications" are "motions" and must be made in the form of a written motion, in accordance with prescribed motion procedures. This is a non sequitur. The word "application" is a generic term which includes, but is not limited to, "motions." In this connection, it seems quite significant to us that with reference to other proceedings provided for elsewhere in the Appellate Court Rules the word "motion" is used specifically, whereas, in the rule in question, the word "motion" nowhere appears, but instead the word "application" is used. For example, in the same rule (Appellate Court Rule 1) in Subsection (2)(e), it is stated that this court may extend the time for filing the record on appeal ". . . upon motion and affidavit showing good cause and due diligence." Appellate Court Rule 5 makes detailed provisions regarding the practice on motions and it is important to note that there is nowhere therein mentioned anything concerning "applications." We, therefore, hold that the word "application" as used in Appellate Court Rule 1(1)(c) is not synonymous with the word "motion," and accordingly, that the procedure with reference to "applications" is not the same as the procedure with reference to "motions." From our examination of the record, we find that the undisputed affidavit of the reporter filed in the Trial Court and the order of the Trial Court entered thereon disclosed "good cause shown." There is no indication of any prejudice whatsoever to the appellees. We therefore find that the procedure followed in this case in the Trial Court

274

with reference to the extension of time was proper and in compliance with Appellate Court Rule 1(1)(c) and accordingly hold that the motion to dismiss the appeal is denied.

Appellees further contend the appeal should be dismissed for a failure to properly abstract the notice of appeal and the judgment appealed from. Our examination of the record in this regard shows a satisfactory compliance with Appellate Court Rule 6.

We will now turn our attention to the questions raised on the appeal itself.

The first and most serious single question involved in this appeal is the matter referred to by the parties as the "joint verdict." The record discloses that each administrator filed suit under the Wrongful Death Act in a single count against both defendants, Royse and the Railroad. Each administrator, in a single count, alleged wilful and wanton misconduct against Royse in one paragraph, alleged negligence against the Railroad in a separate paragraph, and then in a separate paragraph alleged that the wilful and wanton acts of Royse "*and*" the negligence of the Railroad were the proximate cause of the death of the intestate. On the basis of the foregoing, each plaintiff claimed damages jointly against Royse and the Railroad company in the sum of $30,000.

Plaintiffs-appellees claimed at the trial and still claim here on appeal that they were authorized to file their suit in this fashion and that having done so, the form of verdict submitted to the jury could only find either (1) for the plaintiff and against both defendants jointly; or (2) find against the plaintiff and in favor of both the defendants, and tendered forms of verdict with related instructions on this basis.

The defendant Railroad Company contended below and contends here that this is erroneous, and that it

was entitled to a separate finding as to it, a single defendant, on the question of liability, and tendered a form of verdict with an appropriate instruction which would have permitted the jury to find in favor of the plaintiff and against one defendant and in favor of the other defendant and against the plaintiff. Plaintiffs-appellees objected to the submission of the tendered form of verdict and instruction proposed by the defendant Railroad company and argued below and continue to argue here that if the jury found in favor of either defendant, it was obliged to find in favor of both defendants and against the plaintiff, and as a corollary argued that any verdict in favor of the plaintiff must be against both of the defendants.

In order to answer the issues raised in this regard, it is necessary to examine the historical development of both the substantive and procedural rules regarding "joint tortfeasors," "joint liability," and "joint action."

At common law, the original meaning of a "joint tort," *in the substantive sense,* was that of vicarious liability for concerted action. The common-law rule was that all persons who acted in concert to commit a wrong in pursuance of a common design were held, jointly and severally, liable for the entire result. Each participant was considered to be the agent of the other, engaged in a joint enterprise, and each was, therefore, considered to be liable for the entire damage done to the injured party which was commonly, indivisible. At common law, *in a* procedural sense, "joint action" meant simply that two or more persons might be joined, properly, as defendants in the same action. The common-law procedural rules as to joinder were extremely strict. Joinder of two or more defendants was limited to cases of concerted action. At common law, if concert of action was not

276

involved, there could be no joinder. These common-law concepts were carried forward into our jurisprudence and continued to be present until the adoption of modern procedural codes. As corollary to these rules, and consistent with the strong policy against joinder, the common law consistently held that when defendants did not act in concert and/or the case did not involve the doctrine of *respondeat superior,* the defendants could not be sued jointly even though the acts that they had committed were identical in character and the combined effect of their acts was to cause a single, indivisible injury to the plaintiff. See: Prosser on Torts, Second Edition, 1955, Pages 234–237.

■ One of the great problems resulting from the foregoing approach of the common law requiring separate actions except in very limited areas, was its effect which prohibited the complete settlement of all questions connected with the transaction in a single suit and which, therefore, necessarily required a multiplicity of suits which was expensive and time consuming. The drafters of modern practice codes, noting this undesirable feature of the common law, decided to change the *procedural* aspects of the common law in this regard. It was and still is quite common for procedural codes to contain provisions permitting "the complete settlement of all questions connected with the transaction in a single suit" by adopting liberal rules regarding the joinder of parties. Such a liberal, *procedural,* rule is contained in Section 24 of our Civil Practice Act. That rule provides in part:

> "(1) Any person may be made a defendant who, either jointly, severally or in the alternative, is alleged to have or claim an interest in the controversy, or in any part thereof, or in the transaction or series of transactions out of which the controversy arose, or whom it is necessary to

> make a party for the complete determination or settlement of any question involved therein, or against whom a liability is asserted either jointly, severally or in the alternative arising out of the same transaction or series of transactions, regardless of the number of causes of action joined."

This change, which is solely *procedural* in nature, and which had as its sole justification the elimination of the multiplicity of suits and the permitting of a determination of all aspects of a single wrong in a single suit did not, and was not intended to, change the *substantive* law regarding "joint torts." This fact is made clear by an examination of the development of the Illinois cases in this area.

In Pierson v. Lyon & Healy, 243 Ill 370, 90 NE 693, the Illinois Supreme Court, in 1910, had before it an action by a single plaintiff, in a single count, against two defendants, jointly. It was alleged that the defendant, City of Chicago, had been guilty of negligence in permitting a hole to exist in the street and remain unrepaired; it was alleged that the defendant, Lyon & Healy, through its employee, was negligent in driving its truck into the hole; it was alleged as a result of the negligence of the defendants the plaintiff was injured, and the plaintiff sought a joint judgment against the defendants. At the close of all of the evidence, the trial court gave a peremptory instruction directing the jury to find the defendant, City of Chicago, not guilty. The jury returned a verdict as directed and also a separate verdict finding the other defendant, Lyon & Healy, guilty and assessing the plaintiff damages at $10,000. On appeal, it was contended by appellant:

> ". . . that the declaration charges the proximate cause of appellee's (plaintiff's) injury was

the combined and concurrent negligence of appellant and the city of Chicago, and that the verdict of not guilty as to the city of Chicago was equivalent to a finding that the negligence charged in the declaration was not proved. . . ."

In this regard, the appellant was relying on the common-law concept of "joint tortfeasors" and/or "joint liability," and therefrom was reasoning, as plaintiffs-appellees have tried to reason here, that since the defendants were sued jointly, only, and there could be but one judgment for one amount for the single indivisible injury, then if one defendant was found not guilty, both defendants must be found not guilty. This reasoning was also related to what has commonly been called the "unit judgment" rule. In answer to this contention, the Supreme Court said:

". . . We do not think the rule invoked by appellant is applicable to the declaration in this case. It is true, negligence is alleged against both appellant and the city of Chicago, who were made joint defendants. In Indianapolis and St. Louis Railroad Co. v. Hackethal, 72 Ill 612, it was held unnecessary in actions of tort against several defendants to prove a joint liability in order to justify a recovery; that if the guilt of any one of the defendants of the negligence charged in the declaration was proven a recovery could be had as to such defendant. See, also, Illinois Central Railroad Co. v. Foulks, 191 Ill 57."

The Supreme Court then affirmed the judgments below, holding that in a joint action, against alleged joint tortfeasors, there was no requirement that the judgment had to be against both defendants or against neither defendant, but that it was perfectly proper for there to be a judgment in favor of one defendant and against the other defendant. To the same effect

and on the basis of the same reasoning is the decision of the Illinois Supreme Court in Linquist v. Hodges, 248 Ill 491, 94 NE 94. Subsequently, it has been held in Lasko v. Meier, 394 Ill 71, 67 NE2d 162 (1946), that a verdict rendered against only one of two joint tortfeasors is good, even though the complaint charged joint negligence. To the same effect are the holdings in Skala v. Lehon, 258 Ill App 252, affirmed 343 Ill 602, 175 NE 832 (1931). It is also interesting to note that way back in 1900, in Chicago & W. I. R. Co. v. Doan, 93 Ill App 247, affirmed 195 Ill 168, 62 NE 826, that the Illinois Supreme Court held that it does not follow that because one is found not guilty that such finding can conclusively establish the innocence of another. In view of the foregoing authorities, it has been stated in 35 Ill Law and Practice, Trial, Section 312, Page 106, "In an action against joint tort-feasors the jury may properly return a verdict in favor of one tort-feasor and against another tort-feasor." In this connection, see also the case of Tandrup v. Sampsell, 234 Ill 526, 35 NE 331 (1908), where the Illinois Supreme Court held that the recovery of a judgment, in an action of tort, jointly against several wrongdoers does not merge the several liability of each wrongdoer in the judgment, and the plaintiff's claim may still be regarded as a joint and several one, permitting the sustainment of the judgment on appeal against one defendant and a reversal as to the other defendant.

The entire development of the law in this area is carefully traced in the case of Chmielewski v. Marich, 2 Ill2d 568, 119 NE2d 247 (1954). There the court had before it a case in which a single plaintiff brought suit for a single indivisible injury against several joint tortfeasors, jointly. All of the defendants defaulted and a default judgment was entered against them jointly for $15,000. Thereafter, the trial

court set aside the default judgment as to one of the defendants, and subsequently, believing that the matter was governed by a rule of "unit judgment," the trial court, solely because it had set aside the default judgment as to one defendant, set aside the default judgment as to all defendants. On appeal, the Supreme Court held that the trial court had been in error in so doing. In so holding, the Supreme Court pointed out that in joint suits against joint tortfeasors, it had been clearly established in Illinois that: (1) a plaintiff need not join all joint tortfeasors as defendants, but *may* do so as a matter of procedure for convenience; (2) if the plaintiff sues more than one joint tortfeasor in the same action, he may, after a favorable verdict against all, dismiss the action as to one and take judgment against the others alone; (3) in an action against joint tortfeasors, the jury may properly return a verdict in favor of one tortfeasor and against another tortfeasor; (4) in an action against joint tortfeasors, the court may direct a verdict in favor of one tortfeasor and let the case against the other go to the jury, which may thereupon return a verdict against the other tortfeasor; and (5) if a verdict is returned against two joint tortfeasors, the court may grant a new trial as to one of them only. The Court stated at Page 251 of its Opinion at 119 NE2d:

"Upon a full consideration of the problem, we are of the opinion that the question of whether or not a judgment against defendants who are liable jointly, or jointly and severally, is to be treated as a unit should not be determined arbitrarily by rule of thumb, but on the basis of those factors which have to do with the substantive rights of the litigants. Whatever may have been the considerations which prompted the original adoption of the broad common law rule, we have been unable to discover any which are now rele-

281

vant. The decisions in this State are devoid of any argument in its favor, and none is suggested by counsel here. We hold, therefore, that when a judgment or decree against two or more defendants is vacated as to one of them, it need not for that reason alone be vacated as to any of the others. . . ."

It seems clear to us that the liberal joinder permitted by modern *procedural* rules does not change the substantive law with reference to the joint and several liability of joint tortfeasors. To hold otherwise would be to allow *procedural* rules to control the substantive law of liability. It is equally clear that under the Illinois cases, as a matter of *substantive* law, in a suit by a single plaintiff for a single indivisible injury against joint tortfeasors alleging joint liability, that each defendant is clearly entitled to a separate determination of his several liability. Such a determination was denied to the Railroad company in this case by the form of verdicts submitted to the jury, and by the denial of the tendered form of verdict offered by the Railroad which would have permitted this separate determination. Appellees further contend that the verdict forms used in this case were justified by the well established rule that in cases of this sort, the jury may not apportion the damages among joint tortfeasors. This rule is not controlling and has no application to the primary question of liability of each of the defendants. In this case the jury had no opportunity to make the primary determination on the liability of each defendant, separately. For this reason, the decision below must be reversed.

During the trial of this case, several serious questions concerning interrogatory practice, witnesses and evidence arose. These problems have been presented to this court in this appeal. Since this case will be retried and the same questions may again arise, we

feel that it is desirable to pass on these questions at this time.

 The first of these questions concerns the contention of the appellant that the evidence adduced at the trial clearly established that the plaintiff's intestate was guilty of contributory negligence as a matter of law. As we have so often pointed out, the question of contributory negligence is a question of fact to be determined by the jury. We will not substitute our judgment for theirs in a case such as this where there is ample evidence from which the jury could find that the plaintiff's intestate was free from contributory fault.

It is next contended by the appellant that the trial court committed reversible error in refusing to permit several witnesses to testify, arguing that the trial court lacked the power to invoke this sanction. It is admitted by all the parties that the plaintiff submitted written interrogatories calling for the names of persons with knowledge of relevant facts concerning the occurrence which was the subject matter of the litigation and that the defendant failed to list the names of the witnesses in question in answer to that interrogatory. It is quite clear that the sole reason for the exclusion of these witnesses by the trial court was the failure of the appellant to list their names in the answers to the interrogatories, when their names were known to the appellant at the time of the making of the answers.

Considerable confusion exists in the cases regarding the power of the trial court to exclude witnesses whose names are not given in answer to interrogatories properly calling for them. An examination of the cases from other jurisdictions displays that such exclusion by the trial court is the standard penalty imposed for such failure. See, for example, Sather v. Lindahl, 43 Wash2d 463, 261 P2d 682 (1953);

Evtush v. Hudson Bus Transp. Co., 7 NJ 167, 81 A2d 6 (1951); Newsum v. Pennsylvania Railroad, 97 F Supp 500 (SDNY 1951). The same practice is followed in the Federal Courts as indicated in the case of Jay Bee Warehouse Co. v. American Eagle Fire Ins. Co., 270 F2d 883 (7th Cir 1959). In Illinois, Supreme Court Rule 19–12(3) lists certain sanctions which the court may impose for failure or refusal to comply with the discovery rules, including the rules concerning written interrogatories to parties. The sanction of the exclusion of a witness is not set forth in the rule, nor does the rule contain any language which specifically states that other sanctions may be imposed. Since the adoption of Supreme Court Rule 19–12(3), there have been seven cases dealing with this problem. Chronologically, the first case was Granger v. Turley, 20 Ill App2d 488, 156 NE2d 610 (1959) where the court implied that the failure to furnish the name of the witness in answer to an interrogatory calling therefor might justify the trial court in refusing to permit that witness to testify. Following the Granger case, in 1960, the First District Appellate Court, in Perez v. Baltimore & O. R. Co., 24 Ill App2d 204, 164 NE2d 209 (1960), recognized the exclusion of the testimony of a witness whose name was not given in answer to an interrogatory as a permissible sanction, but found this sanction inapplicable under the particular facts involved in that case. In 1962, the First District again had occasion to consider the problem in an indirect manner in the case of Reske v. Klein, 33 Ill App2d 302, 179 NE2d 415 (1962). In that case, it was again suggested that the exclusion of a witness was a proper sanction and that the use of that sanction was a discretionary matter with the trial court. Later that same year, the First District again had a case involving this problem in Roberts v. Hyland Builders Corp., 34 Ill App2d 276, 181 NE2d 197 (1962). Actually, this

284

case did not deal with the problem in the majority opinion. However, Judge English dissented and in his dissent, he dealt specifically and directly with this problem. It was Judge English's opinion that the trial court lacked the power under the Supreme Court rules to exclude a witness whose name was not given in answer to an interrogatory calling for it. This was the first time that such a suggestion had been made, and is very likely the source of the conflicting decisions to be hereinafter discussed. Following the Roberts case, in Battershell v. Bowman Dairy Co., 37 Ill App2d 193, 185 NE2d 340 (1961), a court for the first time had an opportunity to pass directly upon this question. In that case, the defendant failed to give the name and address of an eyewitness (known to him) in answer to an interrogatory calling for the identity and location of all persons who had knowledge of relevant facts relating to the occurrence in question. The trial court refused, upon proper application, to exclude the witness and his testimony. The case was reversed for that failure on the part of the trial court, the appellate court saying:

> "The (trial) court should have excluded the witness or imposed as an alternative a sanction which would have effectively protected plaintiff against harm to his case due to lack of prior knowledge of this witness."

Not only did the Battershell case directly hold that the trial court had the power, and in that instance the duty, to exclude a witness whose name was not given in answer to an interrogatory, but the court also suggested the possible imposition of some other adequate sanction, such as temporary suspension of the proceedings or the declaration of a mistrial. At the very end of the year 1962, the Fourth District had occasion to consider the problem, directly. In

285

Hansel v. Friemann, 38 Ill App2d 259, 187 NE2d 97 (1962), the trial court had permitted a witness to testify, over objection, whose name was not given in answer to an interrogatory. In holding that the trial court had not committed reversible error in this regard, the Fourth District Appellate Court concluded that the trial court lacked the power to exclude the testimony of any witness as a sanction for nondisclosure. After so holding, the Fourth District Appellate Court said:

"When a litigant is properly surprised by a witness whose name and address should have been furnished him, the court should, in its discretion, recess the hearing, or continue it for such time as will be reasonably necessary to allow the surprised party to interview the witness or verify his story. In the event that it appears to the court that substantial injustice would be done by allowing the witness to testify, or if it appears that the offended party would have chosen different jurors or procured other evidence, it may even be proper for the court to declare a mistrial."

The Fourth District Appellate Court offered no authority for the suggested alternative sanctions.

The latest case on this subject is Dempski v. Dempski, 27 Ill2d 69, 187 NE2d 734 (1963). In that case, the trial court had, upon objection, refused to permit witnesses to testify whose names were not given in answer to an interrogatory calling for them. In affirming the action of the trial court, in this and other regards, and without citation of any authority, the Supreme Court of the State of Illinois recognized the power of the trial court to impose this sanction and with reference thereto stated:

"The determination of whether or not there was wrongful or inexcusable noncompliance with the

286

discovery order was, in the first instance, the responsibility of the trial judge, and from the record before us it does not appear that his discretion was improperly exercised."

In light of all the foregoing decisions and the reasoning related thereto, it is our conclusion that a trial court has the power to exclude a witness whose name is not given in answer to an interrogatory calling therefor, even though there is no specific language in the Supreme Court Rules in this regard. The specific sanctions set forth in Supreme Court Rule 19–12(3) relate only to pretrial discovery procedures. Those rules do not relate, necessarily, to sanctions that can be taken at the time of trial. A reading of the sanctions listed in Supreme Court Rule 19–12(3) indicates that they are all of a type and nature which should be imposed prior to a trial and that accordingly, it is obvious that the intent of the drafters of the rules was not to pre-empt the discretionary powers of the trial judge in his conduct of a trial or to in any way limit the sanctions that might be imposed at that stage of the proceedings. We believe that trial courts have, and must have, broad discretionary power to insure a fair, just and orderly trial. To this extent and for this reason, we believe that the terms and provisions of the Evidence Act are necessarily subject to these powers of the trial judge, to insure fairness in the trial. In this regard, we are in complete accordance with the statement made by the Fourth District Appellate Court in Hansel v. Friemann, supra, which is the only case contrary to our holding herein. Likewise, we conclude that the sanctions listed in the Supreme Court rules are not exclusive, but are likewise subject to broad discretionary power in the trial court.

We hold that the exclusion of a witness whose name is not given in answer to an interrogatory

calling for it is but one of the discretionary powers committed to a trial judge for the proper conduct of litigation, and there are other powers such as those suggested both in the Hansel case and the Battershell case, etc. We further hold that there is no mandatory rule requiring the trial court to exclude a witness whose name is not given, but that the trial court is under a duty, when the situation arises, to delay the trial for the purpose of ascertaining the type of witness involved and the content of his evidence, the nature of the failure or neglect or refusal to furnish the witness' name, and the degree of surprise to the other party, including prior knowledge of the name by said party. We also believe that there may be other valid and related considerations which the trial court should make. After considering all of these factors, the trial court should determine the appropriate sanction to be invoked and then apply it.

 The foregoing outline of procedure should be followed by the trial court in the retrial of this case on remand from this court.

At the trial of this case in the Circuit Court, the defendant offered a portion of General Order 138 of the Illinois Commerce Commission. This order, in part, had to do with the general approval by the Commerce Commission of all railroad crossing devices installed prior to the effective date of the order. Upon timely objection, the court refused to admit this evidence. In so doing, there was no error. The complaint charged the defendant Railroad with negligence in placing the pole on the concrete abutment in the center of the public highway without sufficient warning lights and signals and with negligence in maintaining the same, with reference to painting, lighting and other warning. The order of the Commerce Commission was not competent evidence on the issues of either negligent construction or negligent mainte-

288

nance. This is the precise reasoning of McGettigan v. New York Cent. R. Co., 268 NY 66, 196 NE 745 (1935).

■ During the trial of this case, the attorney for the defendant Railroad was in the process of cross-examining one of the plaintiff's witnesses. In his cross-examination, the attorney for the Railroad held a memorandum in his hand. The memorandum concerned an interview between the witness and a representative of the defendant Railroad which occurred at a time prior to the trial of the cause. The record discloses that after the examination in question had been made by the attorney for the Railroad, the attorneys for the plaintiff objected to his use of the memorandum and demanded that the trial court order the attorney for the Railroad to produce the memorandum for their examination. The trial court ordered the production, the attorney for the Railroad refused, the trial court found the attorney for the Railroad guilty of contempt. From the contempt order, the attorney for the Railroad took an appeal to this court which we decided in People ex rel. Morgan v. Mulliken, 41 Ill App2d 282, 190 NE2d 502 (1963). Without going into the merits of that case, it is sufficient to say that the trial court was held to have been in error in ordering the attorney for the Railroad to produce the memorandum. The memorandum was never shown to the attorneys for the plaintiff, but impounded by the court. An examination of the entire record concerning this proceedings shows that although the ruling of the trial court was in error, it was nothing more than harmless error and no prejudice was sustained by the defendant Railroad in that regard.

■ Near the conclusion of the trial below, the Railroad company offered the evidence of a trust officer of the Champaign County Bank & Trust Com-

pany and two stipulations held in escrow by his Bank. Briefly, the stipulations constitute an agreement limiting to $1,000 the amount which plaintiffs might collect on any judgment against the individual defendant John Joseph Royse or his father, irrespective of the total amount of any judgment. The stipulations specifically are not releases. The stipulation was not proper evidence to be presented to the jury, nor was it proper to admit oral evidence with reference thereto. Burger v. Van Severen, 39 Ill App2d 205, 188 NE2d 373 (1963).

The last question raised in this appeal concerns the right of a parent to recover, separately and in addition to the recovery under the Wrongful Death Act, for the cost of medical expenses and funeral bills paid on behalf of a child. By analogy to the cases which have held that a widow may maintain a separate action and have a separate recovery for medical, hospital and funeral expenses paid on behalf of the husband, appellees argue that such right exists in favor of parents when payments are made on behalf of a child. These decisions concerning the right of a wife with reference to a husband, which are hereinafter mentioned, are predicated on the contents of the Husband and Wife Act, Ill Rev Stats c 68, § 15. See for example, Thompson v. City of Bushnell, 346 Ill App 352, 105 NE2d 311 (1952); Staken v. Shanle, 23 Ill App2d 269, 162 NE2d 604 (1959); Saunders v. Schultz, 20 Ill2d 301, 170 NE2d 163 (1960). Appellees contend that the Public Assistance Code, Chapter 23, Ill Rev Stats, Sections 112, 402, 404 and 414, impose the duty upon parents to bury their unmarried children. Admittedly, in this case, the intestates were both minors, had both graduated from high school, had both held jobs of their own, both apparently had money of their own, and at the times of their deaths,

290

one was in the military service and the other attending college.

■ In opposition, appellant makes a two pronged argument, namely: (1) the statute in question places a burden of payment upon parents only in the event the estate of the child was insufficent to cover those expenses and in this particular case the individual assets of the children coupled with their possible recoveries on behalf of their estate in the wrongful death actions made their estate solvent, and (2) that the provisions of the Husband and Wife Act are substantially different and distinguishable from the provisions of the Public Assistance Code. On the first point, there is no doubt that a recovery under the Wrongful Death Act is for the exclusive benefit of the widow and next of kin of the deceased person, and is not treated as a part of the estate of the deceased and creditors can get no benefit therefrom. See City of Chicago v. Major, 18 Ill 349.

■ On the second question, we find that the provisions of the Public Assistance Code are not sufficiently similar to the provisions of the Husband and Wife Act to warrant recovery in this case. The Husband and Wife Act, in Section 15, of Chapter 68 places a direct obligation upon each spouse to pay all of the "expenses" of the other spouse, and necessarily included within the definition of "expenses" are medical expenses resulting from accidental injuries and funeral expenses resulting from accidental death, all as indicated in the three cases above cited construing that act. On the other hand, Chapter 23 is a statute which deals principally with matters of public assistance. In Sections 112 and 402 of that statute, reference is made to an obligation upon parents to "support" children. No reference is made in those sections to funeral or medical expenses and we do not feel that

the word "support" was intended to apply to such expenses. Sections 404 and 414 do refer to medical expenses and funeral expenses but only in connection with the payment of public assistance funds therefor. Nowhere in any of these sections of Chapter 23 is there imposed a direct obligation on parents for the payment of medical or funeral expenses of children such as the direct imposition contained in Chapter 68, Section 15.

Accordingly, we hold that a parent cannot maintain, separately, and in addition to an action to recover under the Wrongful Death Act, a suit to recover the costs of medical expenses and funeral bills paid by the parent on behalf of the child.

For the reasons stated, the judgments below are reversed and the cases remanded for a new trial, as to the defendant Railroad only, since the other defendant did not appeal.

Reversed and remanded.

CARROLL, PJ and ROETH, J, concur.