Michael McDonald, Plaintiff-Appellee, v. Alvin Trampf, et al., Defendants-Appellees.
Michigan Mutual Liability Company, Garnishee and Third-Party Plaintiff-Appellant, v. John Skovanek and Lincoln Cas. Co., Orley C. Hopper and Highway Ins. Co., and Michael McDonald, Third-Party Defendants-Appellees.

Gen. No. 49,038.

First District, Second Division.

April 28, 1964.

Hubbard, Hubbard, O'Brien & Hall, of Chicago, for appellant.

Joseph D. Gannon, of Chicago, for appellee, McDonald. Brooks, Gordon & Simon, Jerome M. Brooks and Robert L. Brody, of Chicago, for appellees, Skovanek, Lincoln Casualty Company, Hopper and Highway Insurance Company.

MR. JUSTICE FRIEND delivered the opinion of the court:

Michael McDonald, plaintiff, was injured on November 28, 1954, as the result of a collision of his car with a car driven by Alvin Trampf. In Count I, of his complaint, McDonald sued Trampf, and in Count II he named John Skovanek and Orley C. Hopper as codefendants under the Dram Shop Act for having caused the intoxication of Trampf. The jury returned a verdict for McDonald and against Trampf, Skovanek and Hopper and assessed the damages at $18,000. Execution issued against Trampf in the amount of $18,000 plus $48.80 for costs and charges. The execution was personally served on Trampf and returned by the Sheriff showing no part satisfied. Garnishment proceedings were then instituted against Trampf's insurer, Michigan Mutual Liability Company on May 17, 1962.

Michigan Mutual filed a third-party complaint on June 12, 1962, wherein it identified itself as the insurance carrier of Trampf to the extent of $20,000 and named as third-party defendants John Skovanek and Lincoln Casualty Company, his insurance carrier, to the extent of $15,000, and Orley C. Hopper and Highway Insurance Company, his insurance carrier, to the extent of $15,000. The third-party complaint conceded liability for only one-third of the judgment and asked that the third-party defendants pay the balance of $12,000.

On June 21, 1962, the court rendered judgment for $6,000 against Michigan Mutual on its answer, and it was paid. On September 19, 1962, judgment was entered in favor of Michael McDonald, judgment creditor (plaintiff-appellee), and against Michigan Mutual Liability Company, garnishee-defendant (appellant) in the amount of $12,250. On September 21, 1962, judgment was entered in favor of John Skovanek, Lincoln

Casualty Company, Orley C. Hopper and Highway Insurance Company, third-party defendants (appellees) and against Michigan Mutual Liability Company, third-party plaintiff (appellant), dismissing the third-party complaint on motion of the third-party defendants. The September 19th and September 21st judgments are the basis of this appeal.

The third-party defendants contend that the judgment of the trial court dismissing the third-party complaint was correct because (a) the third-party complaint in this case is specifically barred by the statute which creates the third-party remedy; (b) the garnishment proceedings do not permit third-party practice of the kind sought by the third-party plaintiff in this case; and (c) the third-party plaintiff, who is the subrogee of a tort-feasor, cannot obtain contribution from the other joint tort-feasors.

■ ■ The statute which creates the third-party remedy is sec 25, chap 110 (Ill Rev Stats 1961). The last sentence in paragraph 2 states:

> "Nothing herein applies to liability insurers or creates any substantive right to contribution among tortfeasors or against any insurer or other person which has not heretofore existed."

The third-party defendants contend that this sentence precludes the plaintiff, a liability insurer, from initiating a third-party proceeding in order to secure contribution. Such a construction, they say, would be contrary to good sense and to cases interpreting sec 25. Paragraph 2 of section 25 was designed to allay any fears that the substantive law of contribution was sought to be changed or that the question of liability insurance could be injected into an action. The recent case of Coffey v. ABC Liquor Stores, Inc., 13 Ill App2d 510, 142 NE2d 705 (1957), makes this clear. In that case the complaint charged the tavern owners with

selling liquor to and causing the intoxication of an individual who injured the complainants. The tavern owners in turn, filed a third-party complaint pursuant to sec 25 against the individual who injured the complainants. Although the Appellate Court sustained a dismissal of the third-party complaint, it was on the theory as to the nature of a tavern owner's liability under the Dram Shop Act, and not on the ground that this section precludes the filing of a third-party proceeding for the purpose of securing contribution. Blaszak v. Union Tank Car Co., 37 Ill App2d 12, 184 NE2d 808 (1962) and Holcomb v. Flavin, 37 Ill App2d 359, 362, 185 NE2d 716 (1962), also support this position.

■ The third-party defendants' second contention is that the Garnishment Act does not permit third-party proceedings. According to the third-party defendants, the deductions, set-offs and other rights that the garnishee is entitled to assert in a garnishment matter are specifically provided for by the Garnishment Act (Ill Rev Stats 1961, c 62) and these do not include the right to file third-party proceedings under sec 25, chap 110 (Ill Rev Stats 1961). In addition, the third-party defendants point out that garnishment proceedings are excluded from operation of the Civil Practice Act by sec 1, chap 110 (Ill Rev Stats 1961).

These objections are not well taken. Section 1, chap 110 (Ill Rev Stats 1961), provides that:

"In all those proceedings (including garnishment) the separate statutes control to the extent to which they regulate procedure, but this Act applies as to matters of procedure not so regulated by separate statutes."

The Garnishment Act makes it clear that the Civil Practice Act applies "except as otherwise expressly provided." Paragraph (b), sec 43, chap 62 (Ill Rev Stats 1961) reads as follows:

110

"The provisions of the Civil Practice Act, and all existing and future amendments thereto and the rules adopted pursuant thereto, shall apply to proceedings under this Act except as otherwise expressly provided."

By this paragraph, third-party proceedings under sec 25, chap 110 (Ill Rev Stats 1961) can be used in a garnishment action unless it can be shown that the Garnishment Act expressly provides otherwise. The Garnishment Act nowhere excludes the filing of a third-party complaint in a garnishment proceeding, nor is any provision of that Act repugnant to the nature of a third-party proceeding. The Civil Practice Act, and specifically the right to file a third-party complaint, applies to a garnishment action because it is not a matter of procedure "regulated by separate statutes." We hold that a third-party complaint may properly be filed in a garnishment proceeding.

The remaining contention of the third-party defendants is that the driver of a car who causes an accident and is required to satisfy a judgment which arises out of the accident, cannot get contribution from two tavern operators who caused the intoxication of the driver or from the operators' insurers. On the basis of Economy Auto Ins. Co. v. Brown, 334 Ill App 579, 79 NE2d 854 (1948), this contention must be sustained. Except for a difference in the theory chosen for the recovery, that case and the case at bar involve identical fact situations.

The reason for sustaining the third-party's contention, which is usually reduced to a rule against contribution among joint tortfeasors who are in pari delicto, is not based solely on the holding of the Economy Auto case. In addition it is based on a review of prior Illinois decisions which provide the rationale for the rule. Recent Illinois decisions reflect a willingness

111

to question the meaning of the rule and, in the case of Wright v. Royse, 43 Ill App2d 267, 193 NE2d 340 (1963), to explore its origins. As that case indicates, the meaning of the rule was obscured as the result of the failure to note that procedural changes which enlarged the scope of joinder of defendants should not have been allowed to change substantive rules of tort liability. As was said in that case, at page 276:

"At common law, the original meaning of a 'joint tort,' *in the substantive sense,* was that of vicarious liability for concerted action. The common-law rule was that all persons who acted in concert to commit a wrong in pursuance of a common design were held, jointly and severally, liable for the entire result. Each participant was considered to be the agent of the other, engaged in a joint enterprise, and each was, therefore, considered to be liable for the entire damage done to the injured party which was commonly, indivisible. At common law, *in a* procedural sense, 'joint action' meant simply that two or more persons might be joined, properly, as defendants in the same action. The common-law procedural rules as to joinder were extremely strict. Joinder of two or more defendants was limited to cases of concerted action. At common law, if concert of action was not involved, there could be no joinder. These common-law concepts were carried forward into our jurisprudence and continued to be present until the adoption of modern procedural codes. As corollary to these rules, and consistent with the strong policy against joinder, the common law consistently held that when defendants did not act in concert and/or the case did not involve the doctrine of *respondeat superior,* the defendants could not be sued jointly even though the acts that they had committed were iden-

112

tical in character and the combined effect of their acts was to cause a single, indivisible injury to the plaintiff. See: Prosser on Torts, Second Edition, 1955, Pages 234–237." (Emphasis in the original.)

As the opinion points out, the drafters of modern practice codes changed the procedural aspects of the common law to provide for the complete settlement of all questions connected with the transaction in a single suit. They did this by adopting liberal rules regarding the joinder of parties. Page 278:

> "This change (to liberal rules of joinder), which is solely *procedural* in nature, and which had as its sole justification the elimination of the multiplicity of suits and the permitting of a determination of all aspects of a single wrong in a single suit did not, and was not intended to, change the *substantive,* law regarding 'joint torts.'" (Emphasis in the original.)

The common law provided, then, that parties were held jointly and severally liable only when they acted in concert to commit a wrong in pursuance of a common design. The early Illinois cases set forth this view.

In Farwell v. Becker, 129 Ill 261, 21 NE 792 (1889), the court considered, at length, the problems of contribution among joint tortfeasors. The case involved an intentional tort committed under mistake. Several attaching creditors sued out writs, with no intention of committing a trespass or injuring anyone, but with the honest belief that a transfer of goods made by their debtor was fraudulent. Their actions, however, were unlawful. The court held that each creditor would be compelled to pay his just proportion of the judgment against them. The tort was thus free of malice and without an intentional violation of

113

the law. The opinion indicated that the rule of no contribution was to be limited to cases in which willfulness or malice was present, saying at pages 269, 270:

"There are cases which hold that no right of contribution exists between wrongdoers . . . . (W)e do not think the weight of authority sustains the doctrine that no right of contribution exists between wrongdoers as it is broadly stated in Merryweather v. Nixon. Indeed, the later English cases do not, in our opinion, sustain the doctrine as it is laid down in that case . . . . '(T)he rule that wrongdoers can not have redress or contribution against each other, is confined to cases where the person seeking redress must be presumed to have known that he was doing an unlawful act.' . . ."

The purpose of the court seems to have been, by way of strong dictum, to isolate the common-law no contribution rule as one whose essential requirement was intentional wrongdoing. See: Contribution Between Joint Tortfeasors, Paul O. Proehl, 49 IBJ 880 (1961). Subsequent decisions, for the most part, have followed the principles set forth in Farwell v. Becker.

In Chicago Rys. Co. v. R. F. Conway Co., 219 Ill App 220 (1920), the court, at page 223, states the rule in the same terms as the court in the Farwell case. The court said, "This rule (against contribution or indemnity among joint tortfeasors) is only applied to cases of intentional or conscious wrongdoing." In the Conway case, a street car company, which by agreement with the city was required to make repairs on its tracks, employed an independent contractor to make them. On a dark night, a motorcyclist was injured by excavations made during the repairs by the contractor and, as a result, recovered against the street car company. In finding for the street car company, in their action over against the contractor, the court said, at page 223:

114

"If the parties are not equally criminal, the principal delinquent may be held responsible to his codelinquent for damages incurred by their joint offense. In respect to offenses, in which is involved any moral delinquency or turpitude, all parties are deemed equally guilty, and courts will not inquire into their relative guilt. But where the offense is merely *malum prohibitum,* and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties and to administer justice between them, although both parties are wrongdoers." (Emphasis in the original.)

Since the street car company was not guilty of any moral delinquency or turpitude, the court inquired into the relative delinquency of the parties and administered justice between them by allowing the street car company a complete recovery against the contractor. Both the plaintiff and defendant were negligent and therefore liable to the motorcyclist for his injuries. But the court displayed a willingness to adjust the burden of liability—in other words—to determine who was the active and the passive tortfeasor.

The above quotation from the Conway case was incorporated into the opinion of the court in John Griffiths & Son Co. v. National Fireproofing Co., 310 Ill 331, 141 NE 739 (1923). The court went on to say, at page 339:

"The general rule is that where two parties acting together commit an illegal or wrongful act the party injured may hold both responsible for the damages resulting from their joint act and neither can recover from the other the damages he may have paid or any part of them. The further general principal is announced, however, in many cases, that where one does the act which produces the injury and the other does not join in the act

115

but is thereby exposed to liability and suffers damage the latter may recover against the principal delinquent, and the law will inquire into the real delinquency and place the ultimate liability upon him whose fault was the primary cause of the injury."

The court was stating, in other words, that contribution or indemnity would be denied only among joint tortfeasors who acted concertedly and intentionally.

In Pennsylvania R. Co. v. Roberts & Schaefer Co., 250 Ill App 330 (1928), the court allowed full recovery by a railroad from a contractor of a judgment paid by the railroad to one of its employees injured as a result of a faulty machine installed by the contractor on the premises of the railroad. The court, in quoting Union Stock Yards Co. of Omaha v. Chicago, B. & Q. R. Co., 196 US 217, 25 Sup Ct 226 (1905), said, at page 336:

"When two parties, acting together, commit an illegal or wrongful act, the party who is held responsible . . . for the act cannot have indemnity or contribution from the other, because both are equally culpable or *particeps criminis,* and the damage results from their joint offense. This rule does not apply when one does the act or creates the nuisance, and the other does not join therein, but is thereby exposed to liability and suffers damage. He may recover from the party whose wrongful act has thus exposed him. In such case the parties are not in *pari delicto* as to each other, though, as to third persons, either may be held liable." (Emphasis in the original.)

If the parties are not in pari delicto as to each other, then they are not equally at fault and the passive

116

tortfeasor can collect against the active tortfeasor. They are not equally at fault because they have not acted together and committed an illegal or wrongful act.

The court in Skala v. Lehon, 343 Ill 602, 175 NE 832 (1931), uses pari delicto in this same way, at page 605:

> "It is true, as a general rule, that the right of contribution does not exist as between joint tort feasors where there is concerted action in the commission of the wrong. Where, however, there is no concerted action the rule does not apply, as the parties in such case are not *in pari delicto* as to each other, and as between themselves their rights may be adjusted in accordance with the principles of law applicable to the relation in fact existing between them." (Emphasis in the original.)

As long as the parties have not acted concertedly and intentionally to commit an illegal act or wrong and therefore are not in pari delicto, their rights may be adjusted in accordance with the principles of law applicable to the relation in fact existing between them.

In Gulf, M. & O. R. Co. v. Arthur Dixon Transfer Co., 343 Ill App 148, 98 NE2d 783 (1951), the court, after listing four or five exceptions to the general principle of noncontribution between tortfeasors, and after noting that the case of Pennsylvania R. Co. v. Roberts and Schaefer Co., 250 Ill App 330 (1928), was strongly in point, went on to characterize the exceptions as situations in which negligence of one defendant was passive and therefore situations in which that defendant should not be held liable for damages when the negligence of the other defendant was active. At page 156, the court said:

117

"The vast growth of negligence law has markedly changed the characteristics of negligence actions. Legal negligence no longer embodies a concept of misbehavior just short of the criminal or the immoral. The courts have, therefore, had to find a way to do justice within the law so that one guilty of an act of negligence—affirmative, active, primary in its character—will not escape scot-free, leaving another whose fault was only technical or passive to assume complete liability. In dealing with the question, the courts have had before them the problem stated in Booth-Kelly v. Southern Pacific, supra, that in practically all cases the indemnitee has himself been guilty of legal negligence. This led to some confusion in terms used . . . . What is meant is that plaintiff by act of defendant was made liable for failing to discharge a responsibility even though he, plaintiff, was not guilty of any active negligence."

In such a situation as the above, the defendants are obviously not acting intentionally and in concert, and therefore, the rule of no-contribution does not apply. To the same effect are the decisions in Palmer House Co. v. Otto, 347 Ill App 198, 106 NE2d 753 (1952); Moroni v. Intrusion-Prepakt, Inc., 24 Ill App 2d 534, 165 NE2d 346 (1960); Shulman v. Chrysler Corp., 31 Ill App2d 168, 175 NE2d 590 (1961); and Blaszak v. Union Tank Car Co., 37 Ill App2d 12, 184 NE2d 808 (1962).

Wright v. Royse, supra, is a logical extension of the prior case law which provided for recovery by the passive tortfeasor over against the active tortfeasor. The Wright case allows the question of the liability of the defendants to be decided by a jury's special verdict.

The decision in Mutual Service Cas. Ins. Co. v. Prudence Mut. Cas. Co., 25 Ill App2d 429, 166 NE2d

316 (1960) is not in conflict with prior case law. In that case, an insurance company which was the insurer of one of the two joint tortfeasors settled a suit for damages arising out of an accident in Wisconsin. The settlement was in the amount of $3,500. The insurer then sued for half, by way of contribution, from the insurer of the other tortfeasor, an Illinois resident, in an Illinois court. The court denied contribution on two grounds: first, the plaintiff was seeking to enforce a special statutory remedy under the Uniform Joint Obligations Act, and this remedy would not be enforced in Illinois where such procedure is unknown. The second reason was that plaintiff could not maintain an action against the insurer because the public policy of the State of Illinois does not permit direct actions against liability insurers.

This line of cases indicates that the rule of no contribution among joint tortfeasors applies only when the tortfeasors are acting concertedly and intentionally, Farwell v. Becker, supra; that when the joint tortfeasors have not acted concertedly and intentionally, the court will inquire into the relative delinquency of the parties, whether they have a prior contractual relationship, Chicago Railways Co. v. R. F. Conway, supra; Griffiths & Son v. National Fireproofing Co., supra; Pennsylvania R. Co. v. Roberts & Schaefer Co., supra, or do not have a prior contractual relationship, Gulf, M. & O. R. Co. v. Arthur Dixon Transfer Co., supra; and that when the courts say that the parties are not in pari delicto as to each other, and therefore the passive tortfeasor can collect against the active tortfeasor, it means that the parties have not intentionally and concertedly committed a wrongful act, Pennsylvania R. Co. v. Roberts & Schaefer Co., supra, and Skala v. Lehon, supra. If the joint tortfeasors have acted concertedly and intentionally there is no contribution between them. If they have not so acted,

119

then recovery is allowed by one tortfeasor against the other by inquiring into the relative delinquency of the parties—that is—by determining who was the active and the passive tortfeasor.

In the instant proceeding, Alvin Trampf, the driver of the car which injured plaintiff, Michael McDonald, and John Skovanek and Orley C. Hopper, each of whom operated a tavern and caused the intoxication of Alvin Trampf, were joint tortfeasors. However, Trampf, Skovanek and Hopper did not act concertedly and intentionally to cause the injury to the plaintiff, McDonald. As the driver of the car that injured the plaintiff, Trampf is the active tortfeasor and therefore cannot seek reimbursement from the tavern operators or their insurers. This conclusion is based on the prior case law and the holding of the Economy Auto Ins. Co. v. Brown case. It is not inconsistent with the decision in Coffey v. ABC Liquor Stores, 13 Ill App2d 510, 142 NE2d 705 (1957). In that case, tavern operators, who were sued under the Dram Shop Act, sought to recover, by way of a third-party action, against the person who injured the original plaintiff. The court said that the tavern owners had no right of recovery over against the person who injured the original plaintiff because liability under the Dram Shop Act is penal in nature and the liability is one which the liquor dealers agree to accept and be bound by upon entering the liquor business. That case merely makes it clear that it is public policy of this State that those who are sued under the Dram Shop Act can not diminish their responsibility by being allowed recovery over against a joint tortfeasor. The right to collect under the terms of the Act is given only to the person injured or the personal representative of the deceased, sec 135, chap 43 (Ill Rev Stats 1961). Therefore, in the case at bar, satisfaction could have been obtained from either the active tortfeasor or the tavern operators.

120

The order of the Superior Court of Cook County dismissing on the merits the third-party complaint of Michigan Mutual Liability Co. against John Skovanek, Lincoln Casualty Company, Orley C. Hopper and Highway Insurance Company is affirmed. The order in favor of Michael McDonald and against Michigan Mutual Liability Co. in the amount of $12,250 is also affirmed.

Orders affirmed.

BRYANT, J., concurs.

BURKE, P. J., concurs in part and dissents in part: Plaintiff, as a third-party beneficiary upon obtaining judgment against the three policy holders had the right to sue the insurers as effectively as though he had been named a beneficiary. Ill Rev Stats 1963, chap 73, § 1000. See Simmon v. Iowa Mut. Cas. Co., 3 Ill2d 318, 121 NE2d 509; Slavens v. Standard Acc. Ins. Co. of Detroit, Mich., 27 F2d 859 (p 324); New Amsterdam Cas. Co. v. Murray, 242 F2d 549. Lincoln and Highway admitted that plaintiff is a beneficiary under their policies. These two insurers to the extent of the terms of the policies are admittedly liable for plaintiff's claim. Neither has advanced a valid reason why it should not contribute its share. Plaintiff admits that he is beneficiary under the policies issued by these three insurers. Michigan in its answer as garnishee said that it has "outstanding an insurance policy under which it was obligated to pay on behalf of Alvin Trampf one-third of the $18,000 judgment in favor of Michael McDonald." The third-party complaint alleges that Highway issued its policy which covered the claim of McDonald to the extent of $15,000; that Lincoln issued its policy which covered the claim of McDonald to the extent of $15,000 and that it (Michigan) had issued a policy with a limit of $20,000.

The burden was and is on the judgment creditor to prove the liability of the garnishee. Kores Mfg. Co. v. Western Office Supply, 349 Ill App 208, 110 NE2d 461; Ancateau v. Commercial Cas. Ins. Co., 318 Ill App 553, 48 NE2d 440; Wold for Use of Wegener v. Glens Falls Indemnity Co., 269 Ill App 407; Reid, Murdoch & Co. v. First Nat. Bank, 135 Ill App 49.

Plaintiff did not produce any evidence to overcome the allegations in the garnishee's answer that it was obligated to pay only one-third of the judgment. The third-party complaint alleged that Lincoln was obligated to pay one-third and that Highway was obligated to pay one-third of the judgment. Without the policies we are unable to determine the obligations of the respective insurers. We have held that under the Coffey case because of the public policy manifested in the Dram Shop Act those who are sued under that Act are not allowed to recover against a joint tortfeasor. Michigan asserts that there is a prorata clause in every standard automobile policy issued in Illinois. These policies are required to be filed with the Commissioner of Insurance. Ill Rev Stats 1963, chap 73, § 755(2).

We decide, following the Coffey case, that there may not be contribution between Trampf, Skovanek and Hopper, the original defendants. Without the policies we cannot determine the liability of any of the insurers, including Michigan. The rights and obligations of the three insurers between themselves may be based on a different conception than the rights of the plaintiff against the three original defendants and against any or all of the insurers. These third-party defendants are in the insurance business and therein are licensed and regulated by the State. A stipulation of the policies to prorate the loss between the insurers does not offend against any theory of public policy

122

inhibiting contribution between the individual tort-feasors. The cases holding that an insurance carrier of the tortfeasor stands in the shoes of the tortfeasors do not affect the rights and obligations of the insurers among themselves.

The judgment against Michigan should be reversed and the cause remanded with directions to reinstate the third-party complaint against Lincoln Cas. Co., and Highway Ins. Co., and for further proceedings not inconsistent with this opinion.