(No. 35094.—

*In re* Estate of Martha Green.—(Oscar L. Green, Appellee, *vs.* Herschel S. Green, Appellant.)

*Opinion filed May 22, 1959.*

Ralph E. Suddes, of Mattoon, and Lawrence H. Lenz, of Springfield, for appellant.

August F. Brandt, of Grosse Pointe, Michigan, and Jackson R. Hutton, of Danville, for appellee.

Mr. Justice Schaefer delivered the opinion of the court:

The parents of Herschel and Oscar Green—James A. and Martha Green— executed their wills in 1934. Each of their wills gave the other a residual estate for life with a right to dispose of the property which was qualified by the condition that the approval of Herschel Green, who was named as executor and trustee in each will, was a prerequisite to any sale or mortgage of real estate. Each will provided that whatever remained on the death of the life tenant was to become the *res* of a trust, the income to be paid at the discretion of the trustee, Herschel, to Herschel and Oscar for life with distribution thereafter to their children. James A. Green died in 1935, and his estate was closed in 1939. In 1936, Martha Green executed a codicil to provide for their sons' widows should they survive their husbands. Between 1938 and 1942, Herschel, under an

agreement with his mother, managed the properties which belonged to her in life tenancy and in fee. Martha Green died in April, 1942.

The county court of Crawford County issued letters testamentary to Herschel as executor of his mother's estate in July, 1942. In August, 1942, Herschel filed a verified inventory of his mother's estate, and he filed his claim against his mother's estate in January, 1943, for $7,174.60, the amount allegedly due him under the agreement to manage his mother's property and for money advanced. He did nothing more in his capacity as executor until July 16, 1956, when he filed a supplemental inventory and caused the advertisement of a new claim date for his mother's estate. In August, 1956, he filed another claim against his mother's estate, substantially similar to his 1943 claim but for $40,512.21. In November, 1956, he filed an amended inventory, which claimed part ownership of certain property in himself and his wife.

During the intervening years, beginning in 1949, Oscar Green sought, first in the State courts and then in the Federal, an adjudication of his rights in the trusts established by his parents' wills, an accounting and the removal of Herschel as trustee. This complicated and protracted litigation fills many pages of the reports. (See *Green* v. *Green*, (7th cir.) 218 F.2d 130, *certiorari* denied 349 U.S. 917; 233 F.2d 642; dockets Nos. 11981, 11982 dismissed without opinion; 248 F.2d 780; *In re Green*, 8 Ill. App. 2d 264, leave to appeal denied 7 Ill.2d 630.) On October 27, 1952, Herschel voluntarily resigned as trustee of both trusts and, upon approval of the Federal court, transferred to his successor trustee the property which he represented to belong to the trusts. His accounting of the property of both trusts at that time is identical with the inventory of property he has now inventoried in his mother's estate.

In May, 1957, the county court, sitting in probate, disallowed Herschel's claims against his mother's estate and

ordered his supplemental and amended inventories stricken. The court further ordered him to file within 30 days a proper account limited to his disposition of the assets listed in his original inventory of August, 1942. Herschel perfected an appeal to the circuit court. Oscar moved to dismiss the appeal. The motion was denied. Oscar then filed a motion in the Federal court to restrain Herschel from further proceeding in the circuit court in connection with the property which the Federal court had adjudicated, during the controversy over the trusts, to belong to the James A. Green trust estate. On the day before the scheduled hearing on this motion, Herschel obtained in the circuit court an *ex parte* injunction, without notice or bond, restraining Oscar from proceeding in the Federal court. The next day the Federal court issued the injunction asked by Oscar. (Its issuance was subsequently approved by the Federal Court of Appeals, 259 F.2d 229.) Oscar then moved in the circuit court to vacate the *ex parte* injunction obtained by Herschel and, again, to dismiss the proceedings. From the denial of his motion, he took an interlocutory appeal to the Appellate Court for the Fourth District, which ordered the circuit court to dissolve the injunction and dismiss the proceedings. *In re Estate of Green,* 18 Ill. App. 2d 555.

Now Herschel Green prosecutes this appeal as a matter of right on the ground that a constitutional question arose for the first time in the Appellate Court when that court directed the trial court to dismiss his appeal from probate. Only appellate jurisdiction can be conferred upon Appellate Courts under section 11 of article VI of the constitution, and when an Appellate Court exercises original jurisdiction, it proceeds without constitutional authority. (*Lind* v. *Spannuth,* 9 Ill.2d 311.) The merits of the Appellate Court's decision with respect to the injunction are not before us. Ill. Rev. Stat. 1957, chap. 110, par. 78(6); *Bagdonas* v. *Liberty Land and Investment Co.* 309 Ill. 103.

So the narrow question here is whether the Appellate Court exercised original jurisdiction when it ordered dismissal of Herchel's appeal from probate. We think that it did. The Appellate Court apparently proceeded on the ground that neither the county court nor the circuit court has jurisdiction over the property against which Herschel asserts his claims. Its action is sought to be sustained on the grounds that the Federal court has adjudicated the rights of the parties in the property in question, that Herschel Green is estopped to deny that the property was held by him as testamentary trustee under his parents' wills, and that the claims he now seeks to assert are barred by lapse of time.

These questions of *res judicata, estoppel* and *laches* were presented to the circuit court by the defendant's motion to dismiss the appeal under section 48 of the Civil Practice Act. (Ill. Rev. Stat. 1957, chap. 110, par. 48.) That motion was denied. The defendants, however, did not elect to stand by their motion to dismiss. No final judgment was entered and the correctness of the ruling on the motion to dismiss was not before the Appellate Court on the interlocutory appeal. The fact that a claim may have been previously adjudicated or that it may have been barred by limitations or *laches* does not affect the jurisdiction of the court; rather it presents an issue for determination prior to the entry of judgment.

It may well be that the contentions of the appellee are correct; as to that we express no opinion. But we think that the initial determination should have been made by the trial court, and that by determining them in the first instance the Appellate Court exercised original jurisdiction. There is one provision in the Civil Practice Act which authorizes an Appellate Court on an interlocutory appeal to "direct such proceedings to be had in the trial court as the justice of the case may require," and another which authorizes a reviewing court generally to "make any order which ought

to have been given or made, and make any other and further orders and grant any relief * * * that the case may require." (Ill. Rev. Stat. 1957, chap. 110, pars. 78, 92.) But neither of these provisions was intended to authorize the exercise of original jurisdiction by the Appellate Court.

That portion of the judgment of the Appellate Court which directed the circuit court to dismiss the appeal is vacated, and the cause is remanded to the circuit court of Crawford County.

*Vacated in part, and remanded.*