William E. Buckler, Sr., Plaintiff-Appellee, v. Sinclair Refining Company and Donald Harris, Defendants-Appellants.

Gen. No. 65–37.

Fifth District.

April 4, 1966.

Roberts, Gundlach, Lee & Stubbs, of East St. Louis (Carl W. Lee, of counsel), for appellants.

Reed, Armstrong & Gorman, of Edwardsville (James L. Reed, of counsel), for appellee.

CRAVEN, J.

This is a damage suit for personal injuries arising out of an automobile accident. The plaintiff alleged his injuries were sustained as the proximate cause of the negligence of the defendant Donald Harris while acting as the agent of the defendant Sinclair Refining Company. The trial court directed a verdict for the plaintiff and against both defendants on the issue of liability. Thereafter the jury assessed damages in the amount of $95,000. The defendant appeals and requests a new trial on the issue of damages. No issue was raised as to the trial court's determination of the issue of liability.

The defendant assigns the following errors as a basis for a new trial on the issue of damages:

1. Denial of an independent medical examination pursuant to Supreme Court Rule 17–1.
2. Failure to exclude a witness whose name was not furnished in answer to a specific interrogatory.
3. Evidentiary rulings relating to the question of damages.
4. Improper closing argument on behalf of the plaintiff.
5. Erroneous instructions on the issue of damages.
6. Excessiveness of the verdict.

Because the question of liability is not in issue a recitation of the facts surrounding the accident is not required. A detailed chronology of the pertinent pleadings and discovery practice, including trial and pretrial maneuvers, is important because of the underlying premise of the defendant's appeal. The defendant contends that the trial court permitted the plaintiff to manipulate the pleadings unfairly, avoid proper discovery, utilize improper evidence and prejudicial argument to obtain a verdict for manifestly excessive damages.

The complaint in this cause was filed on July 29, 1964. Count one alleged certain acts of negligence by the defendant Donald Harris, as agent of the Sinclair Refining Company, which proximately caused permanent injury to the plaintiff's person and loss of past and future income. The prayer asked damages in the amount of $750,000. Count two alleged wilful and wanton misconduct and sought compensatory damages in the same amount. No claim was made for punitive damages.

On August 18, 1964, the defendant filed certain interrogatories, pursuant to Supreme Court Rule 19–11, requesting the names of all doctors who treated or examined the plaintiff after the accident, together with the total medical expenses to date.

On the same date the defendant moved, pursuant to Supreme Court Rule 17, for the production of the books and records of the plaintiff, including income tax returns.

On September 16, the plaintiff answered the defendant's interrogatories, listing Dr. Charles V. Lair, a clinical psychologist, and Dr. J. W. Chambers, a dentist. Total to date medical expenses were stated to be $2,028.83. The report of Dr. Lair was attached. This report disclosed:

> "Test signs are consistent with a chronic brain syndrome with anxiety and depression. This is marked by intellectual deterioration, mild disturbances of memory, concentration, comprehension and judgment, and increasing emotional instability. It is my belief that the patient is reacting to brain damage, . . . ."

On September 18, the defendant requested a continuance to discover the basis for Dr. Lair's conclusion of brain damage and to obtain an independent medical examination. The continuance was denied.

The cause was originally set for September 23, 1964. The complaint was amended on that date to strike the claim for wilful and wanton misconduct, to change the claim for loss of income to loss of earning capacity, and to reduce the ad damnum from $750,000 to $250,000.

The case began on September 28. A mistrial was declared on September 29, and the trial was reset for October 19.

On the date the mistrial was declared the defendant moved for an additional medical examination relating to the alleged organic brain damage caused to the plaintiff. The plaintiff filed a motion to strike, setting forth that prior to trial the plaintiff had submitted to four independent medical examinations at the defendant's request.

On October 9, 1964, the trial court denied the defendant's motion for a physical examination.

The plaintiff, William Buckler, enjoyed good health throughout his life and early in his career played college and professional football, at which time he weighed approximately 250 pounds. At the time of the accident the plaintiff was sixty years old, 6 ft. 1 in. in height and weighed 228 pounds. He was operating his own small industry, Buckler Foundry Company, Inc., in which he, his son and his wife owned all the shares. He was a graduate of mechanical engineering, majoring in metallurgy. All his professional life was spent in the field of metallurgy with Central Foundry, at Hope, Alabama, John Deere and Company, Allis-Chalmers and Mount Clemens Foundry, until he founded his own company. The plaintiff testified he personally supervised the operation and instructed the workmen in their duties.

The physical injuries sustained by the plaintiff, according to the medical evidence and the plaintiff's testimony, included possible brain damage, loss of grip in the left hand due to severed ligaments and tendons, pain and disability in the left hip, blurred vision, loss of hearing in the right ear, impaired general hearing and balance, a fractured cheek bone with accompanying numbness, constant headaches and sleep disturbances, and numerous lacerations to the face and body.

In the plaintiff's opening statement it was disclosed to the court that Dr. Marvin Rosecan, a St. Louis internist, would be called as a witness. The defense immediately objected because the name of Dr. Rosecan had not been furnished to the defendant in response to the following interrogatory:

> "1. What are the names of all doctors who have seen or examined you since the accident alleged in the complaint, . . .?"

The name of Dr. Rosecan was given by the plaintiff as a treating and examining physican during a discovery depo-

sition taken by the defense on June 13, 1964, prior to the date suit was filed. The defense contends that, since the plaintiff stated this was during the time he was in the hospital for plastic surgery, they had no opportunity to anticipate the nature of Dr. Rosecan's testimony.

 The question of the appropriate sanction, if any, to be employed by the trial court for failure to list a witness in response to a proper interrogatory is within the discretion of the trial court. Ferraro v. Augustine, 45 Ill App2d 295, 304, 305, 196 NE2d 16. Refusal to employ any sanction is not an automatic abuse of discretion (Nagelmiller v. Seibel, 47 Ill App2d 39, 45, 197 NE2d 457), although the trial court may abuse its discretion in failing to employ sanctions in certain cases (Rosales v. Marquez, 55 Ill App2d 203, 204 NE2d 829). Some of the criteria that should be weighed in determining the appropriateness of a sanction are:

1. The surprise to the opposing party.
2. The good faith of the party calling the witness to notify the opposing party.
3. Equal opportunity and access of the opposing party to interview or depose such witness prior to trial.
4. Prejudice resulting to the opposing party from such testimony.

Since the defendant had knowledge that Dr. Rosecan attended the plaintiff, the defendant was not warranted in assuming what the examination disclosed or the nature of Dr. Rosecan's conclusions. If there was prejudice or surprise it was, at least in part, due to failure of the defendant to inquire more fully into the nature and significance of this examination.

This question is related to the alleged error involving the court's failure to allow the defendant an independent medical examination relating to the plaintiff's claim of

organic brain damage. The plaintiff asserts that "good cause" has not been shown in compliance with Supreme Court Rule 17–1. The defendant claims that a denial of the examination was error, contending that "good cause" was shown and because of the element of surprise to it. The defendant's only medical witness, Dr. Herbert E. Rosenbaum, testified to certain tests given Mr. Buckler which failed to indicate any evidence of brain damage. On cross-examination, Dr. Rosenbaum testified that loss of taste and hearing was not indicative of organic brain damage.

There is no evidence of wilful concealment of an element of damages or of a prospective witness. The plaintiff's witness was known to the defendant prior to the time that suit was filed. Failure to pursue more exhaustive discovery procedure should not require the exclusion of material evidence or require suspension of all legal proceedings to allow the defendant to obtain expert rebuttal testimony. Perhaps a continuance, another physical examination, exclusion of Dr. Rosecan as a witness were possible appropriate sanctions. However, we cannot say that the trial court abused its discretion in failing to invoke them under the circumstances of this case. Even if we were to find an abuse of discretion by the trial court in a case where there is no question of liability, and where the injuries are serious, the wide latitude afforded a jury in assessing damages would preclude a finding of prejudicial error unless the abuse was clear and the prejudice apparent.

The plaintiff introduced no evidence of medical expense. The defendant then attempted to read into evidence the plaintiff's answers to interrogatories propounded by the defendant wherein the total amount of medical expense was stated to be $2,028.83. The plaintiff objected and, with leave of court, amended his complaint to delete the claim for medical expense. The court then, on

the grounds of immateriality, excluded the defendant's offer to show the amount of the medical expense. After the close of all the evidence the defense suggested an instruction directing the jury to exclude medical expenses as an element of damages. Instead, the standard damage instruction (IPI sec 30.01, et seq.) was given and the element of medical expenses deleted. No written instruction to disregard medical expenses was actually tendered the trial court by the defense.

 The defendant contends that the plaintiff's answers to the defendant's interrogatories are binding upon the plaintiff as admissions of a party-opponent. Answers to interrogatories may be used as admissions if the answer is relevant and material to issues in controversy. (Supreme Court Rule 19–11(4); Supreme Court Rule 19–10(2)(a), (b).) They may impeach an inconsistent position taken by the party at trial or they may have independent evidentiary value in establishing a material element or issue in the litigation. The fact that they may be used as admissions of a party-opponent does not in and of itself make them relevant. McNealy v. Illinois Cent. R. Co., 43 Ill App2d 460, 193 NE2d 879. Discovery has wide latitude. One of the reasons for such latitude is to define and distinguish the material issues from the collateral. Therefore, every matter which is "fair game" for discovery is not necessarily relevant in light of the pleadings and proof presented at the time of trial.

The defendant further argues that the jury inferred a large medical bill due to the serious injuries of the plaintiff. Medical expenses are not correlated with the nature and extent of a specific injury. A relatively minor injury might require continuing care and attention with all the attendant and cumulative expenses. A severe and permanent loss, such as loss of a limb or bodily function, might result in a minimum of medical expense, especially where the damage is irreparable. There is no evidence

here that the plaintiff attempted to recover medical expenses through inference and no circumstances which warrant a negative instruction on a nonexistent issue. Since no such instruction was tendered, no error can be assigned.

 The defendant contends that Dr. Lair was not competent to express an expert opinion based upon his examination and testing of William Buckler. The defendant argues that Dr. Lair was not a medical expert and, therefore, could not diagnose or give an opinion on the existence of an organic injury or condition. Dr. Lair is a practicing clinical psychologist in St. Louis and on the faculty of St. Louis University medical school. He obtained his Ph.D. in 1954 from Vanderbilt University. To render an opinion an expert need only possess special skill or knowledge beyond that of the average layman, and the determination of his qualifications rests within the sound discretion of the trial judge. People v. Jennings, 252 Ill 534, 550, 96 NE 1077. The weight to be attached to such an opinion is a question for the jury in light of the expert's credentials, the facts upon which he bases his opinion and any limitations placed thereon during cross-examination. A clinical psychologist's credentials have long been recognized as sufficient to allow him to express an opinion in areas not within the realm of ordinary experience. Jenkins v. United States, 307 F2d 637, 643, 644.

 The plaintiff originally made claim for loss of past and future income. In his discovery deposition, taken prior to the filing of this suit, the plaintiff testified he had lost income between $10,000 and $15,000. The plaintiff's tax returns and those of Buckler Foundry Company, Inc., showed an increase rather than a loss in salary or income. The plaintiff later amended his complaint to allege "loss of earning capacity" rather than loss of income, thereby eliminating loss of income as an ele-

ment of damages. Impairment of earning capacity is a proper element of damage to be considered by the trier of fact. 15 ILP Damages, sec 142, at 528. "Recovery of damages for loss of earning capacity is not merely a recovery for wages lost . . . ." See 25 CJS Damages, sec 87, at 952, and cases there cited.

The defendant claims this is an attempt to obscure the court's "search for truth." The only real issue in this case is the extent and nature of the plaintiff's injury and disability and whether, in light of all the evidence, the jury's award is excessive. Loss of income and medical expenses were not in issue in this case and the amount of such losses and any inconsistencies or prior admissions regarding them are, at best, collateral to the court's "search for truth." Instructions were neither given nor offered, nor was any argument made as to either loss of earnings or medical expenses.

You can neither prove nor disprove the nature and extent of a person's injury or disability by showing that he was inconsistent, or even untruthful, about an element of damage to which he is laying no claim. An increase in salary in a corporate business where the employee is also the manager and majority shareholder has no essential relationship to earning capacity, and therefore, under this state of the record, evidence of actual income was properly excluded.

Finally, the defendant argues that prejudicial conduct by the plaintiff while testifying and prejudicial closing argument by the plaintiff's counsel contributed to the allegedly excessive damages awarded by the jury. The plaintiff rubbed his right eye several times while testifying. The defendants requested a recess and demanded a mistrial or that the plaintiff be instructed to discontinue this practice in the presence of the jury. The court instructed the plaintiff not to rub his eye if he could avoid it. The motion for mistrial was denied. The plain-

tiff informed the court that his vision was dimmed because of an eye spasm. The spasms were testified to previously by Dr. Kinney, an eye specialist. The jury was not recalled until the spasm had ended. There was no evidence that the attack was feigned or done with improper motive. Such conduct, where innocent and partially involuntary, is not grounds for a mistrial unless aggravated and repeated or the effect is so apparent as to have unquestioned influence upon the jury's ability to try the issues in controversy fairly. The determination of this issue is primarily one for the trial judge, and absent apparent error he will not be reversed. Ellison v. Sinclair Refining Co., 41 Ill App 436, 444, 190 NE2d 635.

The defendant also suggests that the following argument of plaintiff's counsel introduced a punitive element to the damages sought: "Mr. Buckler is asking you for the sum of $250,000.00. Now, that may or may not be a lot of money to Sinclair, but I say to you . . ." Objection was made by the defendant and sustained by the court; the jury was instructed to disregard the statement. Defense counsel then made a motion for a mistrial which the court denied. Plaintiff's counsel then resumed his argument, stating: "$250,000.00 is no more than payment for the injuries that they have caused to Bill Buckler. . . ."

The defendant further objects to the following argument of plaintiff's counsel: "That is why Bill Buckler is asking you for the full amount that he has sued for, not fifty percent, not twenty-five percent, or if you return the verdict here for twenty-five percent of the amount that he is asking, in my opinion, it would be a slap on the wrist and a victory day for Sinclair." No objection was made at the time to this argument. The defendant now contends that this was a punitive argument and an attempt by the plaintiff to obtain a large verdict by penalizing the corporate defendant. The above

.295

arguments were not proper. However, the second argument was not objected to and the first was ruled upon by the court in favor of the defendant. In addition, the plaintiff subsequently qualified his language in the original statement to clarify to the jury that he was seeking only full compensation for the injuries caused to William Buckler.

 These quotes are isolated and not illustrative of an attempt by the plaintiff to obtain damages of a punitive rather than a compensatory nature. The interruption of plaintiff's counsel in argument, the adverse ruling by the court, together with the admonishment to disregard the statement of plaintiff's counsel, certainly had an adverse effect on any weight the jury might attach to the force of the argument of plaintiff's counsel to substantiate valid compensatory damages. The court's ruling was to the defendant's benefit and cured any error in the original statement. In such case no error can be claimed absent irreparable or incurable prejudice. We find no evidence of such prejudice in this record. The jury's award was substantial as were the injuries to the plaintiff.

We find no error in this record requiring a reversal for a new trial. The judgment is affirmed.

Judgment affirmed.

TRAPP, P. J. and SMITH, J., concur.