Frozen Food Express, a Corporation, Plaintiff-Appellee, v. Modern Truck Lines, Inc., a Corporation; and Andrew J. Tharp, Jr., Defendants-Appellants.
Modern Truck Lines, Inc., a Corporation, Counter-Plaintiff-Appellant, v. Frozen Food Express, a Corporation, Counter-Defendant-Appellee.

Gen. No. 66–34.

Fifth District.

January 23, 1967.

Pope and Driemeyer, and Listeman, Bandy and Hamilton, of East St. Louis, for appellants.

Wham and Wham, of Centralia, for appellee.

GOLDENHERSH, J.

Defendants, Modern Truck Lines, Inc., and Andrew J. Tharp, Jr., appeal from the judgment of the Circuit Court of Marion County entered on a jury verdict in the amount of $6,500. Defendant, Modern Truck Lines, Inc., also appeals from the judgment entered in favor of plaintiff, Frozen Food Express, on its counterclaim.

The evidence shows that Jake Tarlton owned a tractor which was leased to plaintiff. On April 28, 1964, he was pulling a trailer owned by plaintiff, and was driving in a northerly direction on Route 3. At that time, defendant, Andrew J. Tharp, Jr., was driving a tractor-trailer unit owned by defendant, Modern Truck Lines, Inc., in a southerly direction on Route 3. At a point about 3 miles north of Chester, in Randolph County, the vehicles collided. Plaintiff sued for damages to its trailer, defendant, Modern Truck Lines, Inc., counterclaimed for damages to its

vehicle, and the trial resulted in the verdicts and judgments from which defendants appeal.

Defendants contend that the trial court erred in refusing to direct a verdict in their favor on plaintiff's suit, and alternatively, that the judgments should be reversed and the case remanded for a new trial because the verdicts are against the manifest weight of the evidence. Defendants also contend that the trial court committed reversible error in permitting James Herod, a witness called by plaintiff, to testify, and in thereafter denying defendants' motion to strike his testimony.

The evidence shows that the collision occurred near the center of a curve. The curve is banked with the low side to the east. For the northbound vehicle (plaintiff's), the curve was to the right; for the southbound vehicle, the curve was to the left. Both vehicles approached the curve at a speed of approximately 40 miles per hour. It was nighttime, and dark, and the road was wet. The tractors passed without mishap, and the left side of the northbound trailer collided with the left side of the southbound tractor and trailer. Both drivers testified that as the tractors passed, they were on their own sides of the road. Plaintiff's driver stated that he felt an impact, his unit started bouncing around, the impact had knocked the air line loose and he had no brakes, and his vehicle rolled to a stop about 30 yards down the road, and came to rest partly on the east side of the pavement and partly on the east shoulder. He stated that he was "pretty sure" his trailer had not skidded, and he would have felt it, had it skidded.

Defendant's driver, Tharp, testified that the tractors passed without colliding, each tractor was on its own side of the road, and when the tractors passed, he saw the "tail end" of plaintiff's trailer sliding toward him, in the west or southbound lane. He stated that both his tractor and trailer, at all times, were in the southbound lane. His vehicle came to rest on the west shoulder.

87

A State Trooper, called to the scene, testified that the road was very slick, that there were gouge marks on the pavement which had been made by the vehicles, and he was unable to determine which unit was across the center line.

Plaintiff called two additional witnesses, who testified they were in an automobile traveling south behind defendants' tractor-trailer, but they did not know on which side of the highway the impact occurred.

■ "The ruling on the motion for directed verdict is tested by taking only the evidence favorable to plaintiff and drawing legal inferences most favorable for him to decide whether there is any evidence to prove the elements of his case." Wilinski v. Belmont Builders, Inc., 14 Ill App2d 100, 103, 143 NE2d 69.

■■ "Reasonable inferences may be drawn by a jury from established facts, and a verdict may not be set aside merely because the jury could have drawn different inferences from the evidence." Stowers v. Carp, 29 Ill App2d 52, 63, 172 NE2d 370.

■ In Brayfield v. Johnson, 62 Ill App2d 59, 210 NE2d 28, at page 63, this court said: "A court of review can set aside a verdict as being against the manifest weight of the evidence only when it is obvious or clearly evident that the jurors have arrived at an incorrect result. Romines v. Illinois Motor Freight, Inc., 21 Ill App2d 380, 158 NE2d 97 (1959). It is for the jury alone to determine the credibility of witnesses and the weight of the evidence on controverted questions of fact. A verdict based on conflicting evidence and approved by the trial judge should not be disturbed on appeal unless contrary to the manifest weight of the evidence; that is, an opposite conclusion must be clearly evident. Ritter v. Hatteberg, 14 Ill App2d 548, 145 NE2d 119, (1957). Manifest means clearly evident, clear, plain, indisputable. Schneiderman v. Interstate Transit Lines, Inc., 331 Ill App 143, 72 NE2d 705 (1947)."

■ We have examined the testimony and the photographs, and applying the above stated rules to this record, we conclude that the trial court did not err in denying defendants' motions for directed verdict, and the verdicts are not against the manifest weight of the evidence.

During the first day of trial, on Monday, April 19, 1965, plaintiff called as its second witness, one James Herod. Defendants' counsel asked for a recess, and the court and counsel retired into chambers. Defendants' counsel stated to the court that the name of James Herod had not been furnished in answer to their interrogatories, he had not been listed in plaintiff's pretrial conference memorandum, filed on April 15, 1965, and the first notice to defendants of plaintiff's intent to call Herod as a witness was in a telegram which defendants' attorney received on Saturday, April 17, 1965. Sunday, April 18, was Easter. Defendants moved to exclude Herod as a witness.

Plaintiff's counsel advised the court that he had sent the telegram in question on April 16th, upon learning, that day, that Herod could testify to an oral admission made by defendant, Tharp, driver of defendants' truck.

The court denied defendants' motion and permitted Herod to testify. He stated that he was a self-employed, independent adjuster, and was employed by plaintiff to investigate the collision between plaintiff's and defendants' trucks. He interviewed defendant, Tharp, twice. The first interview was in the hospital at Chester, at about 9:00 or 10:00 a. m. on the morning following the collision. He testified that the substance of what Tharp told him was: "Well, the main thing he brought out was that he was driving down the highway and that he met two vehicles and as soon as these two cars passed he reached over to get a pack of cigarettes or get a cigarette out of a pack, and as he raised up it happened—it was right in front of him."

He saw Tharp again approximately a week later, at Tharp's home in Barlow, Kentucky. As to what transpired

on that occasion, he testified: "First of all I got his name and that sort of information and again went over the facts of the accident, and basically he wasn't certain as to exactly what happened, but he says he was going down the highway and he reached over, indicating that the cigarettes were in the seat, to get a cigarette and as he looked up he said it was right in front of him."

Defendant, Tharp, testified that he could not remember anything that happened during the first five days he was confined to the Chester Hospital, and could not remember whether or not he had any visitors during that period. He stated that when Mr. Herod came to his home, he did not discuss the accident with him, and did not make the statement about which Herod testified.

Margaret Tharp, wife of defendant, Andrew Tharp, testified that she was notified of the collision shortly after it occurred, that she went to the Chester Hospital, that during the first 5 days of defendant, Tharp's, hospitalization he was unconscious and talked to no visitors, that Herod called at the hospital and was in Tharp's room briefly but that Tharp, at the time, was not conscious. She testified further, that Herod called at their home but Tharp made no statement at that time.

The order and notice setting this case for pretrial conference contained the following provisions:

"1. At that time and place each party shall furnish to the opposing party a list of all witnesses, having knowledge of the facts, which you plan to use at the trial of this cause, and that upon subsequent discovery of any additional witnesses whom you will use in the trial, the names of such witnesses shall be furnished to the opposing party not less than two days prior to the trial. That in the event such witnesses' names are not furnished to opposing counsel at the pre-trial conference, their testimony will not be admitted except upon proof to the satisfaction of

90

the Court that they were unknown to counsel at the time of the pre-trial conference."

. . . . . .

"4. It is further ordered that any motions for discovery depositions after the pre-trial conference will be automatically denied by the Court. Also any written interrogatories submitted to opposing parties after the pre-trial conference shall be denied."

The interrogatory submitted by defendants reads:

"1. State the name and last known residence address of each person having knowledge of the facts alleged in the complaint filed herein by Frozen Food Express."

█ Plaintiff argues that this form of interrogatory is improper, and in support of its contention relies on Reske v. Klein, 33 Ill App2d 302, 179 NE2d 415, and Grant v. Paluch, 61 Ill App2d 247, 210 NE2d 35. The interrogatory here is clearly distinguishable, in that in Reske, the information requested was the names and addresses of persons having "knowledge of the relevant facts," and in Grant, the interrogatories asked for the names and addresses of "persons having knowledge of relevant facts," and "Who were present or who witnessed the occurrence." Here, the interrogatory was broad enough to include Herod, who purported to have obtained an admission from Tharp.

█ █ The question of what action is appropriate under these circumstances, has been the subject of discussion in numerous opinions of our courts of review. Supreme Court Rule 219(c) vests the trial court with power to enter "such orders as are just," including barring the testimony of a witness. In these instances, as with many other problems which arise in the course of a trial, the trial judge must have broad discretionary power, Wright v. Royse, 43 Ill App2d 267, 193 NE2d 340; Buckler

v. Sinclair Refining Co., 68 Ill App2d 283, 216 NE2d 14. The question for the reviewing court is whether in its ruling, the trial court abused its discretion, Wofford v. DeVore, 73 Ill App2d 92, 218 NE2d 649.

The defendants argue that they were entitled to rely on the pretrial order, and are correct in their contention that Herod was known to plaintiff long before the pretrial conference. Plaintiff admits the employment of Herod to investigate the case, but it is plaintiff's counsel's contention that he had no knowledge of the alleged admissions prior to April 16th, and sent the telegram to defendants' attorneys immediately upon obtaining the information.

█ The defendants knew on the Saturday preceding trial, that Herod might be called as a witness. Admittedly, little could be done on that day, or on Easter Sunday, in the way of interrogation of Herod, or any investigation of his connection with the case. The record shows that defendants announced "Ready for trial" on Monday morning. They made no request for continuance, and did not advise the court of what had transpired. Had the court been informed that defendants desired to take Herod's discovery deposition, and would then require some additional time to investigate the matters about which he was deposed, a refusal to continue the case for a reasonable time for these purposes would have presented for review, an entirely different question, than is presently before us. In many situations, recessing the trial, and making the witness available for interrogation as to the substance of his testimony might obviate the need for a continuance, since the testimony might be merely cumulative, or pertinent to an issue on which the inquiring party was prepared to meet the evidence. A party, in these circumstances, should ascertain the nature of the testimony which the witness will give, and may not, safely, answer ready for trial, and gamble on the trial court's

excluding a witness. We have examined the transcript of what was said in chambers, and although counsel stated that had he known of Herod earlier, he would have taken his deposition, and thereafter investigated the circumstances surrounding his interviews with defendant, Tharp, the record shows that defendants made no motion for continuance, did not request a recess and an opportunity to interview Herod, and did not move for a mistrial. The sole relief asked was exclusion of Herod's testimony, and under the circumstances shown in this record, the refusal of the trial court to grant this relief was not an abuse of discretion.

For the reasons herein stated, the judgment of the Circuit Court of Marion County is affirmed.

Judgment affirmed.

MORAN and EBERSPACHER, JJ., concur.