**John Czochara, Plaintiff-Appellant, v. Howard Parlor Furniture Co., Incorporated, Defendant-Appellee.**

Gen. No. 52,556.

First District.

December 5, 1969.

Leonard M. Ring, of Chicago, for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Thomas D. Allen and Jon R. Waltz, of counsel), for appellee.

MORAN, J.

Plaintiff, John Czochara, was employed as a trailer mechanic by the Berman Leasing Company which leased and performed maintenance on tractor-trailer units, including a number of units leased to the defendant, Howard Parlor Furniture Company.

On November 14, 1962, Joseph Clune, one of defendant's drivers, brought a tractor-trailer to Berman for repairs to its trailer brakes. Plaintiff was under the trailer attempting to fix the brakes when he was severely injured as a result of the tractor-trailer being moved by Clune. The jury found in favor of the defendant, and plaintiff's post-trial motion was denied. Plaintiff appeals.

Plaintiff alleged in his complaint that on the 14th day of November, 1962, he was employed by the Berman Leasing Company as a truck mechanic and was working in that capacity on a tractor-trailer owned, controlled and operated by Howard Parlor Furniture Co., Inc., through its agent and servant, Joseph Clune; and while in the exercise of due care and caution for his own safety, he was injured through the negligence and carelessness of the defendant in one or more of the following ways:

a. Defendant operated said vehicle in a negligent and careless manner.

255

b. Defendant started the motor truck in motion while plaintiff was underneath it in the act of repairing it, causing the truck to run over plaintiff.
c. Defendant failed to give notice or warning to the plaintiff before moving the truck.
d. Defendant failed to keep and maintain a proper lookout for plaintiff before putting the truck in motion.

Clune, who plaintiff first called under section 60 of the Civil Practice Act, testified that on the 14th day of November, 1962, he was employed as a truck driver by the Howard Parlor Furniture Company, when he drove his tractor-trailer furniture van onto the Berman Leasing premises for the purpose of having the trailer brakes repaired. He testified that the trailer was not a tandem and had only one set of wheels in the back.

Berman Leasing Company fronts on the west side of Oakley Avenue, which runs in a general northerly and southerly direction. It has a seven-bay repair garage, with each bay being fifteen feet in width, with a solid concrete apron running the entire length of Berman's premises to the pavement of Oakley Avenue. In our discussion of this case, the bays will be referred to as Bay No. 1, 2, 3, etc., running from North to South. From the exhibits it is difficult to tell where the apron ends and the Oakley Avenue pavement begins. It is thirty-six feet from the east wall of the bay to a row of three lampposts. The evidence does not disclose whether these lampposts are east or west of the westerly boundary of Oakley Avenue.

Clune testified that when he pulled in he parked on the left side of Oakley Avenue, facing north, with the front of his rig about even with the third bay of the garage. He was parked partly on the street and partly on the apron, and east of the lampposts. He also testified that the left side of his trailer was a few feet east of the line of posts.

After parking his truck, Clune went into Berman Leasing Company to see Christy Rogoni, the shop foreman. He then came out of Berman Leasing with the plaintiff, who said he was going to look at the brakes to see what was wrong. The plaintiff had his tools and creeper with him. He crawled under the trailer and Clune got into the cab and worked the valve as he had done on previous occasions. Plaintiff then came up to the cab and said, "This is a pretty old trailer. I don't know whether we got a valve in stock, but I will go and see." "I walked over with him to the door. He went on in the shop and I went to the telephone to call my boss." He testified that it was not unusual for mechanics to work outside at that time and place.

Clune came out of Bay No. 2 and had to go around "a bunch of stuff" that was in the way. He had to walk around a service tractor sitting up on the apron west of the line of posts and west of his truck, so he went straight out the door and then directly south to his trailer. When he passed the service tractor there was a distance of twelve feet to his unit. Once he walked past this service tractor, he never looked to the rear of his own trailer.

On direct examination by the defense attorney, Clune testified that he came out of the garage and got into the tractor. He started the motor, let it run for about thirty seconds to build up pressure in the fuel lines, and then started for the garage, to back in. After he had rolled perhaps five, six, eight feet or so, he felt a thump and heard someone hollering. He jumped out of the truck and plaintiff was lying on the ground. He had run over plaintiff.

William Butler, on behalf of the plaintiff, testified that he worked for Berman Leasing as a parts man on the day of the accident; that just before the accident he was returning in his car with some parts that he had picked up and was headed south on Oakley. He passed the

tractor-trailer while he was going south to the Berman parking lot, which was on the south side of the Berman Building. He parked his car and was getting the parts out of it when he saw someone's feet protruding from the back of the trailer which was parked thirty or forty feet north of him.

He saw Clune come out of the Berman Building where the first stall was and start walking in a southeasterly direction toward his trailer. There were no other vehicles parked between defendant's trailer unit and the Berman Building. Clune got to his vehicle, opened the door and seemed to glance to the south in the direction Butler had parked his car. He then got into the tractor and started the engine. Butler then turned and saw the tractor move, but the tractor hit plaintiff and dragged him forty or fifty feet.

The plaintiff, Czochara, testified that he was a trailer mechanic employed by the Berman Leasing Company at the time of the accident; that he knew Pat Clune because he had worked on his equipment before. He first saw Clune on the day of the accident talking to his foreman, Chris Rogoni. His foreman then called him over and told him to look at Pat's brakes because he was having trouble with them. He came out of the fourth stall and picked up a creeper on his way. A creeper is a unit equipped with roller skate wheels and is used to get under cars. He told Pat to go to his cab and put the lever on his air brakes to see what was wrong. He then went under the front axle on his creeper. He testified that the trailer was a furniture van and had two axles with two sets of wheels on the back.

> "I was by the front axle, in the middle of the trailer, underneath. The valve is in the middle. I crawled under the left side, the driver's side, and I was working by the wheel. My body from the waist up was in front of the axle, and my head was

258

facing north. Pat was in the cab. I hollered 'O.K.' so Pat came out of the cab to the back of the trailer and asked me what was wrong. I told him that the diaphragm was loose, and it was leaking through the diaphragm. The diaphragm is about the middle of the trailer, almost the front of the axle. It's part of the brake. I said, 'Well, I'll try to tighten the bolts. If I can't do anything with it, then I'll have to change a new valve.'

"Then I went back to the shop and got my tools. Pat did not go with me. I left him by the trailer. I left my creeper and things alongside the trailer on the left side. I went back through the fourth door again. I went inside to my tool box and got my tools. On the way back I met the foreman and told him what was wrong and I believe he said, 'Well, do what you can' or something like that.

"This took place inside of the shop between the 4th and 3rd door. Then I went through No. 4 door back to the trailer. At that time I had just two wrenches. I had no parts with me. When I went back out there, Pat was not there. No one was around the trailer. My creeper was there and I picked up the creeper and crawled underneath there. I sort of rolled myself underneath, back again to the valve and started working on the valve. I started tightening the bolts on the valve.

"Then it happened so fast. I heard the engine start, so I hollered and hollered to stop. I was trying to lift myself out beyond the axle, trying to get myself out of there before it started rolling again or something. I forced myself north. I swung around to get my feet, trying to get out of the way. I got my feet out past the wheels and I saw the wheels coming at me and I threw my hands against my body. I felt something hit me and hit me again and that's all I remember."

259

On cross-examination the plaintiff denied that his foreman, Rogoni, told him that they were going to back the trailer into Stall No. 2. He had no idea where Clune was when he went back under the trailer. Most of his body was under the trailer with his head pointing north and his feet south and the axle was not high enough to clear his body. When he heard the engine start he yelled "Stop the equipment," and then the accident happened.

Christy R. Rogoni, on behalf of the defendant, testified that he was a foreman at the Berman Leasing Company on the date in question, when Pat Clune came in with his unit because his brakes needed work. After talking with Clune he told Czochara to go outside and check the valve. He asked plaintiff whether he was going to do the work outside or inside and plaintiff said it did not make any difference to him. Rogoni then told plaintiff that he thought the trailer should be backed into the shop. He met Clune and told him that he would have to back the rig into the No. 2 door. He then went back into the office and the next thing he recalled was someone running into the office saying that there had been an accident and a man had been run over.

 The trial court denied a motion made by the plaintiff at the end of all of the evidence to remove the issue of plaintiff's contributory negligence from the jury. Plaintiff claims that this is reversible error. He argues that his presence under defendant's rig only furnished a condition for his injury and was not a proximate cause; that Clune's act in moving the trailer was an independent intervening cause of plaintiff's injury and therefore under the circumstances plaintiff as a matter of law could not be contributorily negligent.

In Ney v. Yellow Cab Co., 2 Ill2d 74, 117 NE2d 74, the court said at 79:

"... In Neering v. Illinois Central Railroad Co., 383 Ill 366, we stated: 'What constitutes proximate cause has been defined in numerous decisions, and

there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act.' In Johnston v. City of East Moline, 405 Ill 460, we declared: 'An intervening and efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury and itself becomes the direct and immediate cause of the injury. (Citations.) The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was, itself, probable or foreseeable. (Citations.)' "

■ Plaintiff was working under the direction of Rogoni, his foreman, in performing the work on the rig in question. After having tested Clune's brakes, plaintiff talked with Rogoni inside the Berman shop. Rogoni testified that he then told plaintiff that further work should be done inside the shop. Plaintiff denied this. The jury, however, were free to believe Rogoni's testimony and disbelieve plaintiff's denial. A jury of reasonable men and women could reasonably believe that at the time plaintiff went under the truck to work, he might reasonably anticipate that someone might move the truck and that this would pose a substantial risk of harm to him. Since Clune's act in moving the truck was reasonably foreseeable, the jury could have found that it was not an independent, intervening cause of plaintiff's injury.

■ Plaintiff also contends that the verdict in favor of the defendant was in light of the whole record, contrary to the manifest weight of the evidence. As this court stated in Brayfield v. Johnson, 62 Ill App2d 59,

261

210 NE2d 28, in Frozen Food Express v. Modern Truck Lines, Inc., 79 Ill App2d 84, 223 NE2d 275, and again in Cochran v. Parker, 91 Ill App2d 56, 233 NE2d 443:

"A court of review can set aside a verdict as being against the manifest weight of the evidence only when it is obvious or clearly evident that the jurors have arrived at an incorrect result. Romines v. Illinois Motor Freight, Inc., 21 Ill App2d 380, 158 NE 2d 97 (1959). It is for the jury alone to determine the credibility of witnesses and the weight of the evidence on controverted questions of fact. A verdict based on conflicting evidence and approved by the trial judge should not be disturbed on appeal unless contrary to the manifest weight of the evidence; that is, an opposite conclusion must be clearly evident. Ritter v. Hatteberg, 14 Ill App2d 548, 145 NE2d 119, (1957). Manifest means clearly evident, clear, plain, indisputable. Schneiderman v. Interstate Transit Lines, Inc., 331 Ill App 143, 72 NE2d 705 (1947)."

Plaintiff argues strenuously that Clune's testimony is so inherently improbable as to be unworthy of belief. Clune testified that there was a Berman Service tractor about twelve feet west of his tractor and that as he crossed the twelve-foot space between the two tractors, he looked to the left front but not the left rear of the trailer; that he did not enter his trailer on the driver's side but got in on the right side, sliding across the seat to get to the steering wheel.

We agree that this was a strange way for Clune to get into the tractor, but we are unable to say that this testimony is so inherently improbable that we should overturn the finding of the jury.

In Ney v. Yellow Cab Co., supra, the court also said at page 84:

"Questions of negligence, due care and proximate cause are ordinarily questions of fact for a jury to decide. The right of trial by jury is recognized in the Magna Charta, our Declaration of Independence and both our State and Federal constitutions. It is a fundamental right in our democratic judicial system. Questions which are composed of such qualities sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. The debatable quality of issues such as negligence and proximate cause, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness and necessity of leaving such questions to a fact-finding body. The jury is the tribunal under our legal system to decide that type of issue. To withdraw such questions from the jury is to usurp its function. Bailey v. Central Vermont Railway Co., 319 US 350."

In our opinion, there was an evidentiary basis for the jury to find that defendant was not negligent or that plaintiff was contributorily negligent. Under such circumstances we will not substitute our judgment for that of the jury.

For the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.

GOLDENHERSH and EBERSPACHER, JJ., concur.