Donald Smith *et al.*, Plaintiffs-Appellants, *v.* Realcoa Construction Co., Inc., Defendant-Appellee.

(No. 55593;

First District (2nd Division)—July 10, 1973.

HAYES, J., dissenting.

Thompson & Thompson, of Chicago, for appellants.

Norman S. Rosen, of Chicago, for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs, Donald Smith and Harold Gluff, filed an action at law against defendant Realcoa Construction Co. for compensation for services rendered. After a bench trial judgment was entered in favor of plaintiffs in the amount of $230. Plaintiffs appeal from this judgment, and raise these issues for our review:

1. Whether the trial court improperly refused plaintiffs' request for a jury after defendant waived its demand;
2. Whether the trial court improperly permitted the testimony of a defense witness whose name was omitted from defendant's answers to interrogatories; and
3. Whether the decision of the trial court is against the manifest weight of the evidence.

The record indicates that plaintiff Donald Smith was a self-employed excavator. In May, 1964 he was recommended by his brother, Harold Smith, for a job on defendant's Shires subdivision in Des Plaines. Harold Smith was at that time defendant's construction superintendent on the Shires project. On May 7, 1964 plaintiff Smith entered into an oral contract with Earl Rosin, defendant's agent in charge of the Shires subdivision. Plaintiff was hired to excavate and grade, and was to receive an agreed-upon hourly rate for the grading work. In July and August of

1964 plaintiffs were paid a total of $1801 and at trial it was shown that an additional $91 had been paid. Therefore, the sum in controversy at trial was $6349.25. Defendant based its defense on (1) improper work by plaintiffs requiring grading to be redone by third parties hired by defendant and (2) improper billing for time during which plaintiffs' equipment was inoperative. Defendant admitted owing plaintiffs $230 for excavating and back-filling work.

At trial, both plaintiffs testified that their tractor and dump truck had not been idle and that they had received no complaints regarding their grading work while they were on the job. Harold Gluff testified that he was hired by Donald Smith in mid-July, and remained on the job until August 18, that his equipment consisted of a tractor for grading and a dump truck, and that he could not read grading plans very well. Donald Smith testified that he visited the work site approximately 3-4 hours per week, and each of his machine operators kept his own time record. He therefore was not able to testify from his personal knowledge regarding the idle time of his employees or of their equipment. He also testified that he had no recollection of seeing defendant's grading plan at the site, and that he could not recall the substance of any of his conversations with Ted Paige who replaced Harold Smith as superintendent in mid-July, 1964. Harold Smith testified that the grading plan, "Defendant's Exhibit #1," may have been at the site, that his job as superintendent included signing work authorizations before payment could be made for properly done work, and that on one occasion he had signed an authorization for an improperly done grading job which Donald Smith was obliged to regrade.

Earl Rosin, the president of defendant corporation, testified that he visited the job site, and in June of 1964 he advised Harold Smith that the grading was improper. In late July or August, he discussed the problem with Donald Smith who assured him that the work would be done properly. Three former employees of defendant testified that they observed improper grading on the site, and that plaintiffs' equipment was inoperative. Paige, the superintendent at the site from the first week in July until early 1965 testified that he went over the grading plan with Donald Smith, but subsequently he had to summon another contractor to regrade a portion of the land; Harold Gluff could not redo the grading because his tractor was inoperative. Paige declined to sign work authorizations for improperly graded work and also for time when the machines were inoperative. He also testified that Gluff devoted too much time to moving dirt with his dump truck. Phillip Sacks, an assistant superintendent, testified that the tractor and dump truck were idle through July and August. The final witness to testify regard-

ing the improper grading was Michael Rothbard who observed the work at the site and handled defendant's billing. He also stated that from July 14 to August 19, the tractor was idle, but that on two occasions the dump truck was used and those bills were paid.

The trial court made a finding that the grading was not done in a workmanlike manner. The court found that plaintiffs endeavored to do the work, but could not adequately perform, and therefore plaintiffs were properly refused payment. The court entered a judgment for plaintiffs in the amount of $230 based on the admission of defendant of that amount owed plaintiffs.

## OPINION

Plaintiffs first contend that they should have been allowed to demand a jury trial after defendant waived its jury demand immediately prior to the commencement of the trial. The trial court denied their request on the grounds that they had not complied with section 64 of the Civil Practice Act, and since the parties were ready for trial, there was no reason for further delay. Plaintiffs maintain that they did not request a jury at the time of filing their complaint because of the additional two year delay before the case would be set for a jury trial. Therefore, they argue that because they had waited through the delay, they should have been entitled to a jury trial. Defendant contends that the clear and unambiguous provisions of section 64 were not complied with, and plaintiffs have shown no injury.

Section 64 of the Civil Practice Act [1] provides in part:

> "(1) A plaintiff desirous of a trial by jury must file a demand therefor with the clerk at the time the action is commenced. A defendant desirous of a trial by jury must file a demand therefor not later than the filing of his answer. Otherwise, the party waives a jury * * *."

A trial judge exercises discretion in extending or refusing to extend time for filing a jury demand, and each case must be judged on its own facts. (*Dawson v. Maxwell,* 13 Ill.App.2d 228, 141 N.E.2d 642.) The right to a trial by jury may be reasonably regulated, but restrictions should be liberally construed in favor of the right, and the inclination of the court should be to protect and enforce the right. In *Hudson v. Leverenz,* 10 Ill.2d 87, 92, 139 N.E.2d 255 the court stated:

> "However, even though a plaintiff does not file his jury demand 'at the time suit is commenced,' or a defendant 'at the time of filing his appearance,' this court has said that the right to have a jury is not necessarily foreclosed. It is held that by reason of

---

[1] Ill. Rev. Stat. 1969, ch. 110, par. 64.

section 59 of the Civil Practice Act and Supreme Court Rule 8 (now Rule 183), the trial court may in its discretion and under certain circumstances, extend the time for filing the request for jury trial." [Citation omitted.]

Section 59 of the Civil Practice Act[2] provides in pertinent part:

"On good cause shown, in the discretion of the court and on just terms, additional time may be granted for the doing of any act or the taking of any step or proceeding prior to judgment."

Supreme Court Rule 183[3] provides:

"The court, for good cause shown on motion after notice to the opposing party, may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time."

Plaintiffs argue that it is grossly unfair that they were made to wait 5 years for a jury trial, and at the last moment to be denied a jury trial because of defendant's waiver. However, there is no unfairness where plaintiffs, who were in full control of their litigation at the time they commenced their suit, decided not to demand a jury, and in the end, did not have a jury trial. Their reliance on a jury trial came after the fact— after they made their decision not to demand a jury.

It can be argued that section 64 provides relief for defendants who rely on plaintiffs' jury demands which are then waived, and that this court should provide such relief for plaintiffs in the same situations. However, a defendant who is brought into a suit after a plaintiff has filed a demand has no opportunity to make his choice regarding a jury trial, and section 64 allows him to make this initial choice when the plaintiff waives. In the instant case, however, plaintiffs had an initial choice and exercised it, and therefore, plaintiffs' situation is not analogous to the situation provided for in section 64.

■■ It is also argued that a jury trial in this case would not have inconvenienced either party, and therefore, should have been granted. However, to grant plaintiffs a jury trial would destroy the systematic order of procedure for which section 64 provides. The time limitations would no longer be needed, and certainly the purpose of section 64 would be changed. We recognize that time limitations must not be ends in themselves, but in this case they must be applied absent a showing of "good cause." Plaintiffs have not shown "good cause" as would support an extension of 5 years in which to demand a jury. (*Schwartz v. Lake View Tool & Manufacturing Co.*, 4 Ill.App.2d 565, 124 N.E.2d 570.)

---

[2] Ill. Rev. Stat. 1969, ch. 110, par. 59.

[3] Ill. Rev. Stat. 1969, ch. 110A, par. 183.

Therefore the trial court did not err in denying plaintiffs' request for a jury trial.

Secondly, plaintiffs contend that the court erred in permitting Phillip Sacks to testify since he was not listed on defendant's answers to interrogatories.

The court heard argument and held that Sacks could testify because plaintiffs could not show that, at the time defendant answered the interrogatories, it was aware that Sacks had knowledge of facts concerning this case. Plaintiffs argue that Sacks was hired by defendant and defendant knew he worked on the Shires project. The fact that defendant's counsel knew nothing of Sacks until one day before trial is irrelevant. Defendant maintains that Sacks reported to Paige, and both Sacks and Paige left defendant's employ before the answers to the interrogatories were filed.

■■ An interrogatory is directed to the actual knowledge and information available to both counsel and litigant. (*Battershell v. Bowman Dairy Co.*, 37 Ill.App.2d 193, 185 N.E.2d 340.) The interrogatories in the present case requested the names of persons who may have had knowledge of the facts of plaintiffs' complaint or defendant's answer. Sacks was employed as assistant superintendent on the Shires job, and thus defendant obviously knew that he was on that job during the time plaintiffs were employed. Therefore, defendant must have known that Sacks had some knowledge concerning the cause of action. Defendant's failure to list Sack's name in its answers to the interrogatories must be treated as noncompliance with the discovery order.

■■ Where a party offers testimony of a person not listed on an interrogatory, the trial court has power to exclude the witness in its discretion, but exclusion is not mandatory. The trial court has the duty to ascertain the type of witness and content of the evidence, good faith of the party calling the witness, and degree of surprise and prejudice to the other party, including prior knowledge of the witness by the other party. *Wright v. Royse*, 43 Ill.App.2d 267, 193 N.E.2d 340; *Buckler v. Sinclair Refining Co.*, 68 Ill.App.2d 283, 216 N.E.2d 14.

■■ When Sacks was called as a witness, plaintiffs did not ask for a continuance, and the sole relief requested was exclusion of his testimony. Although defendant's counsel failed to notify plaintiffs when he became aware of Sacks' knowledge, there was no showing of bad faith or concealment by defendant, or of prejudice to the plaintiffs. Plaintiffs also knew that Sacks was on the job while they were employed there. (*Frozen Foods Express v. Modern Truck Lines, Inc.*, 79 Ill.App.2d 84, 223 N.E.2d 275.) Therefore, the trial court did not abuse its discretion in allowing the witness to testify. In any event, the testimony would not be

reversible error since the court correctly stated that Sacks' testimony was merely cumulative. *Granger v. Turley*, 20 Ill.App.2d 488, 156 N.E.2d 610.

Lastly, plaintiffs contend that the finding by the trial court is contrary to the manifest weight of the evidence.

■■ A trial judge who sees the witnesses and hears the evidence is in a much superior position to find the truth than is a reviewing court. The weight to be given testimony and credibility of witnesses are matters within the trial judge's province. A trial judge's finding will not be disturbed unless plainly erroneous and against the manifest weight of the evidence. *Johnson v. Fischer*, 108 Ill.App.2d 433, 247 N.E.2d 805.

■■ Our review of the record indicates that the evidence supports the judgment of the trial court. Three disinterested former employees of defendant testified that plaintiffs' grading work was improperly done and that their equipment was inoperative for periods of time during which plaintiffs billed defendant. We note some inconsistencies regarding the dates and length of time during which the tractor was idle and the dump truck was utilized. However, these inconsistencies do not affect the overall credibility of these witnesses who agreed that plaintiffs did not perform properly and that their machinery was idle.

Therefore, for the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

LEIGHTON, J., concurs.

Mr. JUSTICE HAYES dissenting:

My dissent is limited solely to the issue of plaintiffs' right to a jury trial. On the other issues I concur with the majority.

The trial was a bench trial despite plaintiffs' demand for a jury trial made for the first time just before the trial was to commence. The facts and relevant law as to this particular matter are as follows. Section 64(1) of the Civil Practice Act (Ill. Rev. Stat. 1965, ch. 110, sec. 64(1)) provides in relevant part as follows:

> "A plaintiff desirous of a trial by jury must file a demand therefor with the clerk at the time the action is commenced. A defendant desirous of a trial by jury must file a demand therefor not later than the filing of his answer. Otherwise, the party waives a jury * * *. If the plaintiff files a jury demand and thereafter waives a jury, any defendant and, in the case of multiple defendants, if the defendant who filed a jury demand thereafter waives a jury, any other defendant shall be granted a jury trial upon demand

therefor made promptly after being advised of the waiver and upon payment of the proper fees, if any, to the clerk."

Hence, when plaintiffs herein came to the point of filing their complaint, they had a choice to make as respects their right to a trial by jury. They made that choice against a background of fact of which we take judicial notice, namely, that in the circuit court of Cook County in 1965 civil cases in which either party had filed a jury demand were reached for trial a very substantial period of time later than civil cases in which no jury demand had been filed. The parties in this case have not disagreed with the average estimate at that time of five years for jury cases and three years for non-jury cases, and we accept that estimate for the purposes of this case. Plaintiffs, then, knew that, should they file a jury demand, as required, at the time of filing their complaint, they would, if successful in their action, have to wait two years longer for a judgment than would be the case, should they forego a jury demand. They, therefore, elected to forego a jury demand. Defendant, however, timely filed its jury demand and plaintiffs were perforce required to, and did, wait the extra two years. After the full wait, in the late morning of 25 May 1970, the case was assigned for trial at 2:00 P.M. that same day. When defendant entered the assigned courtroom some minutes before 2:00 P.M., plaintiffs were told that defendant was about to ask for a short conference with the trial judge for the purpose of apprising him and plaintiffs that defendant was withdrawing its jury demand. At the conference, defendant did withdraw its jury demand, and the trial judge then told plaintiffs that section 64(1) precluded a late jury demand by plaintiffs. At the commencement of the bench trial minutes later, plaintiffs demanded a jury trial, but, after some argument, were denied a jury trial on the basis of section 64(1) and of the trial judge's obligation to move cases as fast as he could.

I am aware that all but one or two cases dealing with the matter of a late jury demand have dealt with a late demand by a defendant or a co-defendant under the circumstances described in the final sentence of section 64(1), which is the only provision specifically dealing with the matter of a late jury demand. I find this situation readily understandable, since section 64(1) contains no provision relating to a late jury demand by plaintiff. The omission of any such provision is equally understandable because the "mischief" with which the final sentence of section 64(1) purports to deal, is the situation in which a party has elected to forego the timely filing of his own jury demand in reliance on the fact that another party has already filed a timely jury demand. Such reliance then later proves to have been misplaced when the prior party decides

to withdraw the jury demand relied upon. The provision in the final sentence of section 64(1) then operates to relieve the relying party from what would otherwise have been the consequences of his reliance by allowing him to file a late jury demand which should be granted when "there is no showing of inconvenience to the court or the parties litigant or prejudice to any rights in any manner whatsoever". (*Hartsock v. Bress* (1963), 40 Ill.App.2d 66, 69, 189 N.E.2d 673.) Naturally, no provision is made in section 64(1) for a late jury demand by *plaintiff* because, in the very nature of things, plaintiff, in failing to file its timely jury demand, can never be in the position of having relied upon a prior timely jury demand by another party.

In respect of late jury demands, *Hudson v. Leverenz* (1957), 10 Ill.2d 87, 139 N.E.2d 255, indicates the basic approach to be taken by the court. The right to a jury trial is, after all, a constitutional right. (1870 Illinois State Constitution, article II, section 5.) The right may be reasonably regulated by the overriding necessity for an orderly judicial process; hence, reasonable time limits may be placed upon its exercise, but any statute purporting to do this "should be liberally construed in favor of the right and the inclination of the court should be to protect and enforce the right". (*Morrison Hotel and Restaurant Company v. Kirsner* (1910), 245 Ill. 431 at 433, 92 N.E. 285.) Such liberal construction, however, is itself subject to the further limitation that there be an absence of a showing that the granting of the late jury demand would substantially inconvenience either the court or the other litigant, or would prejudice any rights in any manner whatsoever.

In one sense, it is true to say that plaintiffs had a free initial choice of a jury trial or no, and they exercised that choice by opting against a jury trial. Realistically, however, plaintiffs' choice was between two values: a jury trial or a substantially earlier adjudication of their action (an estimated two years). For whatever reasons, plaintiffs' primary value was the shorter time, and for that they sacrificed the secondary value. Defendant then had the same value choice: for whatever reasons, the primary value for defendant was a jury trial. Defendant's choice effectively destroyed plaintiffs' primary value, and plaintiffs had to be content with their secondary value. Then, after the full five-year wait and at the very last moment, defendant withdrew its jury demand, presumably because a bench trial had by then become a superior value for defendant. That plaintiffs still cherished their secondary value is apparent from their immediate motion for leave to file a late jury demand. When defendant objected, the trial court denied plaintiffs' motion on the basis of section 64(1) and of the court's obligation to expedite the dis-

position of cases as much as possible. The result is that defendant has now been able to destroy plaintiffs' secondary value while achieving both of its own values. In a very real sense, plaintiffs' choice of values has been rendered wholly illusory, while defendant's choice has been doubly fulfilled.

I think that such a result puts too much strategic leverage within defendant's power under all the circumstances of this case. Fairness and balance of power between the parties may be restored by allowing plaintiffs, if they see fit, to file a late jury demand. There is no showing of any prejudice or inconvenience to defendant from the allowing of a jury trial, and no showing of any inconvenience to the trial court beyond the possible further delay for a period which would be inconsequential as compared with the two-year additional delay already caused by defendant's jury demand.

I am aware of the provision in section 64(1) that "Otherwise the party waives a jury * * *." I believe, however, that the following sentence in that subsection demonstrates that the General Assembly intended not to make the waiver absolute, and in addition I rely on the language in *Hudson v. Leverenz* (1957), 10 Ill.2d 87, 92, 139 N.E.2d 255 (including the statutory provision and the Supreme Court Rule referred to therein), all as cited and quoted in the majority opinion, so that there is no need to repeat it all here.

As the time lag between bench and jury trials in civil cases in the circuit court of Cook County is diminished, the necessity for the adjustment which I here would make will diminish, and the matter may then be reconsidered.

I would reverse the judgment for plaintiffs and remand the cause to the circuit court of Cook County with directions to allow plaintiffs' motion for leave to file a late jury demand, and for a retrial to a jury, if plaintiffs see fit to file the late jury demand and pay the appropriate fees within three days of the date on which their motion for leave to file is allowed. Should no late jury demand be filed, I would affirm the judgment for plaintiffs.